A95A0807. PRIMERICA LIFE INSURANCE COMPANY
v. HUMFLEET.
(458 SE2d 908)

BLACKBURN, Judge.

This is an appeal of the trial court's denial of Primerica Life Insurance Company's (Primerica) motion for summary judgment opposing the imposition of bad faith civil penalties pursuant to OCGA § 33-4-6.

The evidence viewed in the light most favorable to the nonmovant, appellee Constance Humfleet (Humfleet), shows Humfleet is the widow of decedent Charles Humfleet. On or about October 2, 1992, Primerica issued a policy of life insurance to Charles Humfleet for a face amount of $150,000. Humfleet was listed on the policy as the primary beneficiary, and a number of Charles Humfleet's other relatives were listed as contingent beneficiaries. On September 23, 1993, Charles Humfleet was killed in an armed robbery. It is undisputed that the policy in issue was in effect at the time of his death.

On September 25, 1993, two days after her husband's death, Humfleet informed Primerica of her claim and requested disbursement of the proceeds as quickly as possible in order to pay her husband's burial expenses. Apparently in response to Humfleet's call, Primerica forwarded her a claim form that required, among other things, a certified copy of her husband's death certificate. Humfleet submitted her completed claim form and corresponding documents to Primerica on October 18, 1993. By letter of October 25, 1993, Primer-

ica acknowledged receipt of Humfleet's claim and notified Humfleet of its intent to conduct an investigation into the circumstances of her husband's death. This investigation was permitted under the general provisions of the policy.

The investigation revealed that while the police had no evidence tying Humfleet to her husband's death, she had not been ruled out as a suspect. On November 29, 1993, after payment was not forthcoming, Humfleet commenced the instant action for the face amount of the policy and for civil penalties under OCGA § 33-4-6. In seeking the penalty, Humfleet asserted that Primerica's failure to promptly pay her the policy's proceeds was motivated by bad faith. Particularly, Humfleet averred that Primerica had no evidence that she was associated with her husband's death and that the investigation was merely a ruse designed by Primerica to delay or forego payment of the insurance proceeds.

Primerica answered the complaint, asserting that if Humfleet were involved in her husband's death, the contingent beneficiaries would be entitled to the proceeds, and, accordingly, immediate payment of the proceeds to Humfleet without further investigation could place the company at risk of receiving conflicting claims. Shortly after responding to the present suit, Primerica filed an interpleader action in the United States District Court for the Middle District of Georgia[1] and deposited the proceeds of the policy into the court's registry. Pursuant to a consent order entered in the interpleader action between Humfleet and the contingent beneficiaries, Humfleet was paid the proceeds of the policy.

After payment of the proceeds to Humfleet, Primerica moved for summary judgment in the underlying action on the remaining issue of its bad faith. Primerica asserted that no proper demand had been lodged as required by the statute and that its failure to pay the claim was motivated, not by bad faith, but rather by Humfleet's status as a suspect in her husband's death and by the potential claims of the contingent beneficiaries.

Following oral arguments, the trial court denied the motion, finding that genuine issues of material fact remained for jury resolution. We subsequently granted Primerica's application for interlocutory review.

In order to prevail on a claim for an insurer's bad faith, the insured must prove two conditions: (1) that a demand for payment was lodged against the insurer at least 60 days prior to filing suit and (2) that the insurer's failure to pay was motivated by bad faith. As the

---

[1] At the time of the filing of the interpleader action, two of the contingent beneficiaries resided outside the State of Georgia.

statute imposes a penalty, it is strictly construed. *Howell v. Southern Heritage Ins. Co.*, 214 Ga. App. 536, 537 (448 SE2d 275) (1994).

1. Primerica asserts that 60 days did not elapse from the time it received a proper demand and the filing of the suit. A close review of the record reveals that the only verifiable communication to predate the complaint by sixty days was the telephone call placed to Primerica by Humfleet two days following her husband's death. It has long been the law that in order to serve as a bad faith demand, the demand must be made at a time when immediate payment is due. *Napp v. American Cas. Co. of Reading, PA*, 110 Ga. App. 673, 675 (139 SE2d 425) (1964) citing *American Nat. Ins. Co. v. Brantley*, 38 Ga. App. 505 (144 SE 332) (1928). In the present matter, at the time Humfleet lodged her demand, Primerica had yet to receive any formal evidence of Humfleet's loss, including the death certificate. Also, Primerica had no opportunity to commence an investigation of the death as it was permitted to do under the policy. As no payment was immediately due at the time of Humfleet's demand, no bad faith penalties can arise by virtue of OCGA § 33-4-6.

Moreover, even if immediate payment had been due, Humfleet's demand was insufficient. Clearly, the purpose of the statute's demand requirement is to adequately notify an insurer that it is facing a bad faith claim so that it may make a decision about whether to pay, deny or further investigate the claim within the 60-day deadline. While Georgia law recognizes that no particular language is required to constitute a demand, the language must be sufficient to alert the insurer that bad faith is being asserted. See *Cotton States Mut. Ins. Co. v. Clark*, 114 Ga. App. 439, 447 (151 SE2d 780) (1966) (court action threatened when insurer refused to pay loss). In the present matter, Humfleet's "demand" consisted of a request to receive payment of the policy's proceeds as quickly as possible, a sentiment commonly expressed by those making an insurance claim. Nothing in Humfleet's statement raises the additional specter of bad faith necessary to put Primerica on notice.

Due to the inadequacies of Humfleet's demand, we find that the trial court erred in denying Primerica's motion for summary judgment.

2. Based upon our decision in Division 1, we need not address the issue of whether Primerica's decision to not immediately pay the claim was based on bad faith.

*Judgment reversed. McMurray, P. J., concurs specially and in the judgment only. Andrews, J., concurs.*

McMURRAY, Presiding Judge, concurring specially and in the judgment.

I concur specially and in the judgment because I agree that Con-

stance Humfleet's telephonic demand for payment of benefits was premature because it was asserted before Primerica had proof of the insured's death, i.e., a condition for payment under the policy. I do not agree, however, with the majority's conclusion that the demand "must be sufficient to alert the insurer that bad faith is being asserted." Georgia law has never required such specificity, *Hanover Ins. Co. v. Hallford*, 127 Ga. App. 322, 323 (1a) (193 SE2d 235). And contrary to the majority's reliance, *Cotton States Mut. Ins. Co. v. Clark*, 114 Ga. App. 439, 446 (8), 447 (151 SE2d 780), does not provide otherwise. In fact, even though the insured in *Clark* said nothing about statutory damages when he requested payment under a fire insurance policy, this Court held that the insured's verbal threat of court action against his insurance carrier was sufficient to invoke the 60-day period prescribed by OCGA § 33-4-6.

DECIDED JULY 10, 1995.

*Drew, Eckl & Farnham, Maureen M. Middleton, Theodore Freeman*, for appellant.
*Calvin A. Rouse*, for appellee.