[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11125
Non-Argument Calendar
_____

D. C. Docket No. 1:10-cv-01641-SCJ

GEORGE MATTHEWS,
NINA MATTHEWS,

Plaintiffs-Appellants,

versus

STATE FARM FIRE AND CASUALTY COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____
(December 6, 2012)

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

In this diversity jurisdiction case, Plaintiffs George and Nina Matthews,

proceeding pro se, appeal the district court's order granting summary judgment to

Defendant State Farm Fire and Casualty Company ("State Farm") on Plaintiffs' breach of contract and bad faith claims. Upon careful review of the record and consideration of the parties' briefs, we affirm.

## I. BACKGROUND

Plaintiffs George and Nina Matthews insured their Georgia home with Defendant State Farm. On May 1, 2009, two large oak trees fell upon Plaintiffs' home causing damage. The trees fell in Plaintiffs' backyard and made contact with the rear deck and scraped against the rear exterior two-story wall of the home.

Plaintiffs filed an insurance claim with State Farm. No one contests that the May 2009 loss was a covered loss under the policy. Rather, the dispute here concerns the scope of the damages caused by the trees and the loss amount.

To determine what damages the trees caused, three engineers inspected Plaintiffs' home: (1) Philip Chapski, retained by State Farm; (2) Bill Creeden, retained by Plaintiffs; and (3) Pete Craig, who became involved after Plaintiffs contacted the Georgia Office of Insurance and Safety Fire Commissioner ("Georgia's DOI").

## A.    Engineer Chapski's Report

Chapski's engineering report was prepared on June 10, 2009. In sum, Chapski observed damage to a portion of the rear deck's handrail but found no structural damage to either the main residence or the deck. Plaintiffs notified State

Farm that they rejected Chapski's report, because, <u>inter alia</u>, the report failed to acknowledge obvious damage to the home.

**B.      Engineer Creeden's Report**

Plaintiffs retained their own engineer, Creeden, to evaluate the damage. Creeden submitted his engineering report to Plaintiffs on June 22, 2009.

Generally, Creeden determined that the scope of damages caused by the trees was greater than that found by Chapski.  In his report, Creeden concluded that not only was the rear deck's handrail damaged but that the tree impact forced the rear deck inward against the home, displacing the kitchen cabinets and causing damage to some of the home's rear walls.  As one example, Creeden found that the tree impact pushed the rear two-story wall of the great room inward by about one inch.  Creeden's report described damage caused by the trees in these areas of Plaintiffs' home: the rear deck, the great room, the kitchen, the breakfast area, the basement, the master bedroom, and the bedroom in the left rear area of the home.

But Creeden also concluded that the damage was "not structurally significant, in that the damage [did] not place any elements at risk of structural failure" and the necessary repairs would be "primarily cosmetic."  To repair the damage, Creeden recommended, among other things, removing and replacing sheetrock and base and shoe moldings, pushing or pulling the walls straight, beating back displaced wall studs, resetting the kitchen cabinets, adjusting

3

displaced doors, and repairing or replacing damaged siding and a damaged gutter on the home's exterior.  To repair the two-story wall of the great room, Creeden recommended pushing or pulling the wall straight and installing steel straps to hold the wall in position.

State Farm agreed to pay for the scope of work described by Creeden's engineering report.  State Farm's adjuster, Van Westmoreland, prepared a June 29, 2009 estimate which calculated the cost to make Creeden's recommended repairs as $14,702.01.

Based on Westmoreland's estimate, State Farm sent Plaintiffs a check for $11,002.01.  This represented the net difference between Westmoreland's estimate ($14,702.01), the $1,000 deductible, and a $2,700 advance issued to Plaintiffs by State Farm to cover the cost of removing the fallen trees.  State Farm also paid Plaintiffs $1,979 to cover the damage to their personal property associated with the tree collapse and to reimburse them for the cost of their engineer Creeden's services.

Plaintiffs still disagreed and refused to cash any checks.  Plaintiffs lodged complaints with Georgia's DOI.  In an effort to resolve the dispute, Georgia's DOI asked a third engineer, Craig, to inspect the home independently.  Georgia's DOI required State Farm to pick up the cost.  Plaintiffs were able to point out to Craig all the damages they claimed were caused by the trees.

4

## C.   Engineer Craig's Report

Craig issued his engineering report to Georgia's DOI on August 29, 2009. Craig outlined the scope of the damages that, in his professional opinion, was associated with the trees' impact to the home. Craig concluded that there was no structural damage to the house caused by the falling trees, with the exception of possible minor damage to the two-story rear wall of the great room of the home.

As part of his report, Craig reviewed both prior engineering reports. Notably, the scope of damages outlined in Craig's report was less than that outlined in Creeden's report. Craig noted that Creeden similarly concluded that there was no significant structural damage to the home. In Craig's opinion, what Creeden had recommended was a structural reinforcement rather than repair of the two-story great room wall. And Craig disagreed with Creeden's conclusion that the damage to the interior walls resulted from the tree impact. However, Craig concurred with Creeden's recommendation to reinforce the two-story great room wall, "as a reasonable and prudent precaution."

Adjuster Westmoreland prepared a revised estimate based on Craig's report, concluding that the full cost of repairs for the May 2009 tree loss was $8,558.85.

Despite the revised lower estimate using Craig's more limited scope of damages, State Farm issued Plaintiffs yet another check for $11,002.01 based on Plaintiffs' Creeden report. Thus, State Farm twice sent checks to Plaintiffs to pay

5

the scope of repairs outlined in Plaintiffs' own engineer's report.

## D.     Repair Estimates by Contractors McCune and Lockhart

Plaintiffs still argued the scope of the tree damages and resulting repair costs exceeded State Farm's payments.  Plaintiffs obtained cost estimates from licensed contractors James Michael McCune of AAA Restoration and Jerry Lockhart of LMS Construction.

The McCune estimate totaled $187,030.69.  McCune, however, testified that his estimate was based on all the items Plaintiffs wanted to have included in the estimate, and it was not limited to repairs that were necessary as a result of the tree damage.[1]  McCune's estimate was also not based on any engineering report.  McCune is not an engineer, and he did not offer any testimony as to what was the scope of damages caused by the tree loss.  McCune just estimated what Plaintiffs said was damaged and what they wanted repaired.  When asked to prepare a revised estimate based upon Craig's engineering report, McCune refused to do so and has had no further involvement in the case.

As for the Lockhart estimate, that report lists repair items that total $184,018.62 in costs.  Lockhart's estimate also includes repair items beyond the scope of damages identified in any engineering report, such as repairs in the dining

---

[1]Plaintiffs dispute this and say they did not instruct McCune in this way.  Whether McCune was instructed in this way or not, it remains that McCune affirmatively testified that his estimate included more work than that resulting from the tree damage.

6

room, the foyer, a bathroom, and the office.  In any event Lockhart did not appear for his deposition, and Plaintiffs have not submitted an affidavit from Lockhart. As a result, there is no testimony as to Lockhart's training and experience or upon what information he based his estimate.  The record contains only Lockhart's written estimate he gave Plaintiffs, and thus Lockhart's statements in the report, without any testimony by Lockhart, are classic inadmissible hearsay.

**E.    September 21, 2009 Water Damage**

On September 21, 2009, Plaintiffs made a water damage report to State Farm, claiming it was additional damage associated with the May 2009 tree loss. In a September 25, 2009 letter, State Farm acknowledged that Plaintiffs had "asserted a new claim for water damage" and stated that it would need to complete a visual inspection.  State Farm inspected Plaintiffs' property and determined the September 21, 2009 water damage was unrelated to the May 1, 2009 tree loss.  In April 2010, State Farm told Plaintiffs that they must file a new claim for the September 21, 2009 incident in order to be considered for payment.

**F.    March 10, 2010 Water Damage**

On March 10, 2010, Plaintiffs reported more and different water damage, this time from a leak in their study.  State Farm inspected the property, determined it was unrelated to the tree damage but that it was a covered loss under the policy, and tendered $5,702.76 to repair the leak.

**G.    Plaintiffs' Lawsuit**

On April 13, 2010, Plaintiffs filed this lawsuit against State Farm in state court, alleging that State Farm breached the insurance contract and acted in bad faith.  State Farm removed the suit to federal court pursuant to 28 U.S.C. § 1332.  After discovery, State Farm filed a motion for summary judgment, arguing that there was no genuine issue as to any material fact.

The district court granted summary judgment to State Farm on the breach of contract claims, concluding that, inter alia, State Farm had shown an absence of evidence to support Plaintiffs' contention that the damages from the May 2009 tree loss exceeded State Farm's payments, which were based on Plaintiffs' own engineer Creeden's report.

The district court distinguished between what damages were caused by the trees and the cost to repair those identified tree damages.  First, the district court concluded that Plaintiffs had no expert that would testify that the damages caused by the trees exceeded the scope of the damages outlined in Plaintiffs' own engineer Creeden's report.  The district court rejected Plaintiffs' argument that an expert was unnecessary on causation, agreeing with State Farm that the cause of damage to Plaintiffs' home is a matter appropriate for expert testimony.  Second, considering the cost to repair the tree damages, the district court agreed with Plaintiffs that an expert witness was unnecessary to testify to the repair costs.  But

the district court concluded that Plaintiffs also lacked any evidence that the repair costs exceeded State Farm's payments.  It determined that the Lockhart repair estimate amounted to inadmissible hearsay and the McCune repair estimate was not confined to repairs necessary as a result of the tree loss.  The district court concluded that without any evidence to show that the tree damages or repair costs exceeded State Farm's payments, a jury could not find that State Farm breached the insurance contract.

The district court also granted summary judgment to State Farm on Plaintiffs' bad faith claim, concluding that State Farm had reasonable grounds to contest Plaintiffs' claims and thus did not act in bad faith.  The judgment ordered that Plaintiffs "take nothing" and that State Farm "recover [its] costs of this action."

## II. STANDARD OF REVIEW

We review a district court's order granting summary judgment de novo, "viewing all the evidence, and drawing all reasonable inferences, in favor of the non-moving party."  Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 767 (11th Cir. 2005).  Summary judgment is appropriate when there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).  Where the nonmoving party has failed "to establish the existence of

9

an element essential to that party's case, and on which that party will bear the burden of proof at trial," no genuine issue of material fact exists.  Celotex Corp., 477 U.S. at 322-23, 106 S. Ct. at 2552.  A mere scintilla of evidence in support of the non-movant is insufficient to defeat a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986). Rather, the plaintiff must present "evidence on which the jury could reasonably find for the plaintiff." Id.

### III. DISCUSSION

### A.    Breach of Contract Claims

On appeal, Plaintiffs first argue that disputed facts precluded summary judgment on their breach of contract claims for losses sustained as a result of the May 2009 tree damage and the September 2009 water damage.

The elements for a breach of contract claim in Georgia are (1) a breach of a contract (2) resulting in damages to (3) "the party who has the right to complain about the contract being broken." Kuritzky v. Emory Univ., 669 S.E.2d 179, 181 (Ga. App. 2008).[2]  In the insurance context, "[t]he burden of proof [is] upon the plaintiff to prove that he ha[s] sustained a loss covered by the policy." Chix v. Ga. Farm Bureau Ins. Co., 258 S.E.2d 208, 209 (Ga. App. 1979) (quoting Reserve Life

---

[2]Federal courts sitting in diversity apply state substantive law and federal procedural law. Esfeld v. Costa Crociere, S.P.A., 289 F.3d 1300, 1306 (11th Cir. 2002).  Accordingly, we apply Georgia state law to Plaintiffs' breach of contract claims.

Ins. Co. v. Davis, 164 S.E.2d 132, 133 (Ga. 1968)). The party suing for damages also "has the burden of proof of showing the amount of loss in a manner in which the jury . . . can calculate the amount of the loss with a reasonable degree of certainty. An allowance for damages cannot be based on guess work." Big Builder, Inc. v. Evans, 191 S.E.2d 290, 291 (Ga. App. 1972).

The district court correctly granted summary judgment in favor of State Farm, as Plaintiffs have not presented any evidence sufficient to raise a genuine issue of material fact on their breach of contract claims.

First, as to their claim that State Farm underpaid the May 2009 tree loss, State Farm has paid for the scope of repair work that the three engineering reports identified as caused by the tree loss. In fact, State Farm paid for the scope of work in Plaintiffs' Creeden report even though the scope of work in the independent engineer Craig's report was less.

Plaintiffs rely on the McCune and Lockhart estimates, but these estimates do not create fact issues. While McCune testified and authenticated his estimate, he also testified that his estimate (1) was not based on any engineering report and (2) encompassed repairs beyond the scope of the tree damage.

As for the Lockhart estimate, the only evidence in the record is the written estimate itself. Lockhart did not appear for his deposition and Plaintiffs have submitted no affidavit from Lockhart. Without more, the written estimate is

11

inadmissible hearsay.  See Fed. R. Evid. 802.  But even if we were to consider it, the Lockhart estimate does not help Plaintiffs.  Lockhart's estimate does not identify on what information it was based and it does not tie the repairs to the tree damage.  Indeed, much like McCune's estimate, the estimate includes more repairs than those necessary to repair the tree damage.  For example, the Lockhart estimate includes replacing the flooring in the dining room, the family room, the kitchen, the office, and the living room, and replacing the hardwood stairs.  None of the engineering reports indicated that the tree loss caused floor damage or necessitated floor replacements.

In sum, Plaintiffs have no evidence and no expert testimony to substantiate a claim that either the scope of damages caused by the fallen trees or the cost to repair those damages exceeded what State Farm paid them.  Accordingly, State Farm was entitled to summary judgment on this claim.

Second, Plaintiffs argue that State Farm breached the insurance contract by not paying for the September 21, 2009 water damage claim.  In support of summary judgment, State Farm presented the affidavit of its adjuster, Van Westmoreland, who stated he inspected the damage and found it unrelated to the May 2009 tree loss.  In an April 8, 2010 letter to Plaintiffs, State Farm specifically instructed Plaintiffs on how to file a new claim and proof of loss for the September 21, 2009 incident.  According to State Farm, Plaintiffs simply never filed a

12

separate claim.

In opposition to summary judgment, Plaintiffs only point to State Farm's September 25, 2009 letter acknowledging that Plaintiffs had "asserted a new claim for water damage." But that same letter, as recounted above, stated that a visual inspection must be performed in order to determine if the loss is covered under the policy or related to a previous loss. That visual inspection was later performed; State Farm determined the September 21, 2009 water damage was not related to the May 1, 2009 tree loss and instructed Plaintiffs on how to file a new claim and proof of loss. Plaintiffs never took the necessary step of filing a new claim for the September 21, 2009 water damage.[3]

In sum, Plaintiffs have no evidence showing that this September 2009 loss was related to the covered May 2009 tree loss, that State Farm's instruction regarding how to file a new claim was in conflict with the claim process dictated by the insurance policy, that Plaintiffs complied with that instruction and opened a separate claim, or that this was even a covered loss. In the absence of such evidence, Plaintiffs have not met their burden of showing breach for failure to pay the September 21, 2009 loss. Accordingly, summary judgment was appropriate.

## B.    Bad Faith Claim

Plaintiffs next argue that the district court erred in granting summary

___

[3]As also recounted above, Plaintiffs did file a new claim for the March 2010 water damage which State Farm paid.

13

judgment on their bad faith claim, as State Farm acted in bad faith in underpaying for the May 2009 tree loss and in refusing to pay for the September 2009 water damage claim.

To establish a claim of bad faith on the part of the insurer under Georgia's bad-faith statute, "the insured must prove two conditions: (1) that a demand for payment was lodged against the insurer at least 60 days prior to filing suit and (2) that the insurer's failure to pay was motivated by bad faith." Primerica Life Ins. Co. v. Humfleet, 458 S.E.2d 908, 910 (Ga. App. 1995); Ga. Code Ann. § 33-4-6. "A refusal to pay in bad faith means a frivolous and unfounded denial of liability. If there are any reasonable grounds for an insurer to contest the claim, there is no bad faith." Swyters v. Motorola Emps. Credit Union, 535 S.E.2d 508, 510 (Ga. App. 2000) (emphasis added) (quoting Canal Ins. Co. v. Savannah Bank & Trust Co., 352 S.E.2d 835, 839 (Ga. App. 1987)).

In this case, Plaintiffs have not shown the district court erred in granting summary judgment to State Farm on Plaintiffs' bad faith claim. As described above, Plaintiffs' request for additional payment on the May 2009 loss was based on estimates for repairs which exceeded the scope of the tree damages, and there is no indication in this record that Plaintiffs properly asserted a new claim for the September 2009 loss. Accordingly, State Farm had reasonable grounds to contest the claims.

14

## C.    The Award of Costs to State Farm[4]

Finally, Plaintiffs argue that the district court erred in awarding costs to State Farm.  Plaintiffs contend that so long as their lawsuit was based on a "bona fide controversy," State Farm is not entitled to costs for defending it.

Federal Rule of Civil Procedure 54(d) provides that a court should award costs to a prevailing party "[u]nless a federal statute, these rules, or a court order provides otherwise."  Fed. R. Civ. P. 54(d)(1).  We have explained that Rule 54(d) creates a presumption in favor of awarding costs to a prevailing party.  Chapman v. AI Transp., 229 F.3d 1012, 1038 (11th Cir. 2000) (en banc).  In order "[t]o defeat the presumption and deny full costs, a district court must have and state a sound basis for doing so."  Id. at 1039.

Here, we cannot say Plaintiffs have shown that the district court abused its discretion in awarding costs to State Farm as the prevailing party.  Further, the district court's order that Plaintiffs "take nothing" was proper, as they failed to prove that they were entitled to any relief.[5]

For the foregoing reasons, the district court's order is

---

[4]We review a district court's decision to award costs for an abuse of discretion.  Mathews v. Crosby, 480 F.3d 1265, 1276 (11th Cir. 2007).

[5]Plaintiffs argue that the district court's "take nothing" statement meant the district court set aside the earlier payment amounts of $11,012.01 for the May 2009 loss and $5,702.76 for the March 2010 loss.  The district court's order did no such thing.  Rather, it is undisputed that State Farm already tendered checks in these amounts to Plaintiffs and that Plaintiffs received them.

15

**AFFIRMED.**

16