**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 14, 2018**

# In the Court of Appeals of Georgia

A17A1938, A17A1940. THOMPSON v. HOMESITE INS. CO. OF GA.; and vice versa.

BETHEL, Judge.

These cross-appeals arise from the trial court's partial grant of a motion for summary judgment filed by Homesite Insurance Company of Georgia on claims brought against it by Tara Thompson. On appeal, Thompson argues that the trial court erred by granting summary judgment to Homesite on her claim for bad faith failure to pay an insurance claim under OCGA § 33-4-6. In its cross-appeal, Homesite argues that the trial court erred by denying its motion for summary judgment on Thompson's claim for attorney fees under OCGA § 13-6-11, arguing that OCGA § 33-4-6 is the only statute that permits recovery of attorney fees against an insurance company for its failure to pay a claim. We affirm the trial court's grant of summary judgment in

favor of Homesite on Thompson's bad faith claims. However, because the trial court erroneously denied Homesite's motion for summary judgment on Thompson's claims for attorney fees under § 13-6-11, we reverse that portion of the trial court's order.

> Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[.] Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9–11–56 (c) have been met. In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

*Cowart v. Widener*, 287 Ga. 622, 623-24 (1) (a) (697 SE2d 779) (2010) (citations and punctuation omitted); OCGA § 9-11-56 (c).

So viewed, the largely undisputed record before us reflects that Thompson's home was damaged in April 2011 when a tree fell on it during a storm. In addition to the damage to her home requiring repair, she incurred expenses for the removal of trees and other debris from her property.

Homesite provided insurance coverage for Thompson's property, including coverage for tree and debris removal. After the April 2011 storm, Thompson notified Homesite of the damage. An adjuster reviewed the damage and completed an estimate, and Homesite issued an initial payment to Thompson based on the adjuster's report totaling $1,812.33.

Homesite and Thompson were initially unable to agree on the amount of reimbursement Homesite would provide to Thompson for tree and debris removal. Throughout this process, Thompson made a number of complaints to and about Homesite regarding the handling of her claims. Specifically, she filed a formal complaint with the Georgia insurance commissioner regarding her dealings with Homesite to which Homesite and the insurance commissioner responded. She also sent a number of messages to representatives of Homesite between May 3 and May 18, 2011 inquiring about, and criticizing, the handling of her claims.

After receiving a request for documentation of the cost of the tree and debris removal from a representative of Homesite on June 6, 2011, Thompson provided Homesite with documentation of the expenses she had incurred to remove the trees and other debris on June 9, 2011. Homesite acknowledged receipt of those documents the same day. Homesite did not dispute the amounts submitted by Thompson for

3

reimbursement or make any argument that such claims are not covered by Thompson's insurance policy. Homesite made a payment on the reimbursement claim in the amount of $1,800.00 on October 6, 2011.

In a letter dated October 12, 2011, Thompson's counsel demanded payment of the reimbursement for Thompson's tree and debris removal expenses. In that letter, Thompson's counsel threatened to file a bad-faith claim against Homesite pursuant to OCGA § 33-4-6 if it did not properly reimburse Thompson for the tree and debris removal expenses.

Homesite and Thompson were also unable to agree on the total value of Thompson's losses arising from the damage to her home, and, through the same October 12, 2011 letter, Thompson notified Homesite that she did not agree with the estimate stated in the adjuster's report. Pursuant to Thompson's insurance policy, she and Homesite entered into an appraisal process in regard to the value of the damage to her home. Appraisers hired by Thompson and Homesite both submitted competing estimates to a third-party umpire. The umpire awarded Thompson a net amount of $49,713.69. This award reflected Thompson's total loss of $50,713.69 (as determined by the umpire) less the $1,000 deductible in her policy.

4

Homesite issued a payment to Thompson on May 11, 2012 in the amount of $47,101.36 as payment for in the umpire's award. That amount was equal to the gross appraisal award ($50,713.69) minus the amount of the previous payment made to Thompson based on the adjuster's report ($1,812.33) and the amount Homesite had paid her in reimbursement for tree and debris removal ($1,800), totaling $3,612.33. Homesite never made any additional payment to Thompson, and it contended that the umpire's award was meant to address all covered losses under Thompson's insurance policy, including the expenses she incurred for tree and debris removal. Homesite further contended that offset of amounts previously paid under the policy, including for tree and debris removal, against the umpire's total award was proper.

Thompson filed suit against Homesite in 2012 while the appraisal process was still ongoing. She voluntarily dismissed that lawsuit in November 2014.[1] Thompson then brought a renewal action against Homesite on May 19, 2015, claiming that Homesite had unreasonably delayed reimbursing her for the tree and debris removal expenses and that it had underpaid on the umpire's award, subjecting Homesite to liability under OCGA § 33-4-6, Georgia's bad faith statute. She also brought claims

---

[1] A copy of the original complaint from this lawsuit does not appear in the record.

for breach of contract and for attorney fees. Homesite moved for summary judgment on each claim brought by Thompson. The trial court granted Homesite's motion with respect to Thompson's bad faith claim, but denied the motion as to her remaining claims. These cross-appeals followed.

*Case A17A1938*

1. We first examine whether the trial court erred by determining that Thompson's communications with Homesite were not, as a matter of law, sufficient to support recovery under the bad faith statute. OCGA § 33-4-6 (a) provides, in relevant part, that

> In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer.

Thus, this Court has held that to maintain a claim under this statute, the insured must prove that her claim is covered by the relevant insurance policy, that a demand for

payment was made by the insured at least 60 days prior to filing suit, and that the insurer's failure to pay was motivated by bad faith. *See BayRock Mortg. Corp. v. Chicago Title Ins. Co.*, 286 Ga. App. 18, 19 (648 SE2d 433) (2007).

In this case, the parties do not dispute that the expenses incurred by Thompson for tree and debris removal were covered by her policy. Thus, the trial court's consideration of Thompson's claim under OCGA § 33-4-6 (a) focused on whether her pre-suit communications with Homesite relative to those expenses satisfied the pre-suit demand requirement.[2] We agree with the trial court that they did not.

Because the statute imposes a penalty, its requirements are strictly construed, and a proper demand for payment is essential to recovery. *See Bayrock*, 286 Ga. App. at 19. This Court's prior decisions have required more than an initial claim for payment and instead have noted that "the demand must be made at a time when immediate payment is due. An insured cannot legally demand immediate payment if the insurer has additional time left under the terms of the insurance policy in which

---

[2] The trial court did not reach the issue of Homesite's alleged bad faith. We note that the question of bad faith on the part of the insurer is generally reserved for a jury, absent a reasonable defense from the insurer explaining its delay in payment. *See St. Paul Fire & Marine Ins. Co. v. Snitzer*, 183 Ga. App. 395, 397 (2) (358 SE2d 925) (1987).

7

to investigate or adjust the loss." *Stedman v. Cotton States Ins. Co.*, 254 Ga. App. 325, 327 (1) (562 SE2d 256) (2002) (citations omitted).

The record shows that, on more than one occasion, Thompson stated to representatives of Homesite that she was not happy with Homesite's handling of her claim. She also filed a complaint with the Georgia insurance commissioner, which prompted a response from Homesite. Homesite admitted that it was aware that Thompson was not happy with the progress of her claim when she was lodging these complaints. Because of that, Thompson argues that these communications should have alerted Homesite that she was considering filing a bad-faith claim. We disagree.

As this Court has previously discussed, a demand made under OCGA § 33-4-6 must give the insurer notice that it is facing a bad faith claim. *See Primerica Life Ins. Co. v. Humfleet*, 217 Ga. App. 770, 772 (1) (458 SE2d 908) (1995). The demand need not contain specific language, but "the language used must be sufficient to alert the insurer that it is facing a bad faith claim for a specific refusal to pay so that it may decide whether to pay the claim." *Bayrock*, 286 Ga. App. at 20 (citations and punctuation omitted). As the trial court rightly noted, it is critical that the demand made of the insurer not only express displeasure with the insurer's handling of the

claims process but that such demand actually alert the insurer that the insured plans to take legal action for bad faith if the claim is not paid.

Thompson's communications with Homesite prior to October 6, 2011, as shown in the record before us, failed to alert Homesite that she planned to bring legal action if her claim was not paid. The only pre-suit communication she had with Homesite in which potential litigation was threatened was the October 12, 2011 letter sent by her counsel. However, the threat of litigation pertained only to Homesite's alleged failure at the time to reimburse Thompson for tree and debris removal expenses. As Homesite made payment to Thompson in the amount of $1,800 on October 6, 2011, for those expenses, Homesite had already satisfied the specific demand made by Thompson.[3]

---

[3] We note that Thompson's counsel communicated with Homesite via email in July 2013 in regard to Homesite's decision to offset against the appraisal award amounts for previous payments made to Thompson on the claim, namely the previous payment made to Thompson under the policy and the payment made for tree and debris removal. In that communication, Thompson's counsel argues that this offset constituted a bad faith failure to pay. However, despite Thompson's argument to the contrary, we agree with the trial court that this communication does not satisfy the pre-suit demand requirement of OCGA § 33-4-6 (a) because it was made after Thompson filed suit against Homesite in 2012 and while that suit remained pending. *See Bayrock*, 286 Ga. App. at 19 (noting that a demand for payment must be made by the insured at least 60 days prior to filing suit). Although cast in a different light than the October 2011 demand for the payment, that communication related to Homesite's alleged failure to make timely payment under the policy for expenses for tree and

9

We therefore affirm the trial court's grant of summary judgment in favor of Homesite on Thompson's bad faith claim.

*Case A17A1940*

2. Homesite argues that the trial court erred when it denied Homesite's motion for summary judgment on Thompson's claim for attorney fees under OCGA § 13-6-11. Homesite argues that the attorney fee provision in the bad faith statute, OCGA § 33-4-6, is the exclusive remedy for an insurer's bad faith refusal to pay insurance proceeds. Because the trial court erroneously ruled that Thompson can seek to recover attorney fees from Homesite under OCGA § 13-6-11, we reverse the trial court's denial of Homesite's motion for summary judgment on this count of the complaint.

In this case, Thompson brought claims against Homesite not only for bad faith but also for breach of contract based on Homesite's alleged failure to pay losses, its alleged breach of express provisions of Thompson's insurance policy, and breach of the implied covenant of good faith and fair dealing. Thompson's first breach of

debris removal–the same subject that was then being litigated between the parties. The fact that Thompson later dismissed the original action and subsequently brought a renewal action claiming bad faith on the basis of the offset does not somehow render her attorney's July 2013 email a *pre-suit* communication within the meaning of OCGA § 33-4-6 (a).

10

contract count alleges that her insurance policy obligated Homesite to pay any appraisal award within 60 days and that Homesite breached this obligation by refusing to pay the entire appraisal award to Thompson by the required deadline. The second count for breach of contract alleges that her losses were covered by the policy and that Homesite breached its obligations under the policy by refusing to provide coverage and not acting in good faith when negotiating the extent of coverage it would provide for her losses. The final count for breach of contract alleges that Homesite's actions breached the covenant of good faith and fair dealing implied in all Georgia contracts, as her insurance policy is a contract under Georgia law.

As this Court has noted, "[t]he penalties contained in OCGA § 33-4-6 are the exclusive remedies for an insurer's bad faith refusal to pay insurance proceeds." *Howell v. S. Heritage Ins. Co.*, 214 Ga. App. 536, 537 (2) (448 SE2d 275) (1994). Even where the insured alleges other theories of recovery distinct from a bad faith claim, absent a special relationship beyond that of insured and insurer, if such claims are predicated on the insurer's failure to pay a claim, OCGA § 33-4-6 is the exclusive vehicle through which the insured may make a claim for attorney fees against the insurer. *See Great Sw. Exp. Co., Inc. v. Great Am. Ins. Co. of N.Y.*, 292 Ga. App. 757, 760 n.2 (2) (665 SE2d 878) (2008) (grant of summary judgment in favor of insurer

11

affirmed where insured brought claims for lost profits and punitive damages based on alleged failure of insurer to pay). General penalty provisions under OCGA § 13-6-11 cannot be the basis of recovery where the General Assembly has provided a specific procedure and a limited penalty for non-compliance. *See McCall v. Allstate Ins. Co.*, 251 Ga. 869, 871-872 (2) (310 SE2d 513) (1984). We therefore reverse the trial grant's denial of Homesite's motion for summary judgment on Thompson's claim for attorney fees pursuant to OCGA § 13-6-11.

*Judgment affirmed in part and reversed in part. Branch, J., concurs. McFadden, P. J., concurs fully in division two and concurs in part and dissents in part in division one.\**

**\* DIVISION ONE OF THIS OPINION IS PHYSICAL PRECEDENT ONLY. SEE COURT OF APPEALS RULE 33.2 (a).**

A17A1938, A17A1940. THOMPSON v. HOMESITE INSURANCE

COMPANY OF GEORGIA; and vice versa.

MCFADDEN, Presiding Judge, concurring in part and dissenting in part.

I concur in Division 2 of the majority opinion affirming the trial court's judgment in Case No. A17A1940, because I agree that Homesite was entitled to summary judgment on Thompson's claim for attorney fees under OCGA § 13-6-11. And I concur in that part of Division 1 affirming the trial court's judgment in Case No. A17A1938 to the extent that the trial court granted summary judgment to Homesite on Thompson's bad faith claim pertaining to the tree and debris removal.

But I respectfully dissent to that part of Division 1 affirming the trial court's grant of summary judgment on Thompson's bad faith claim pertaining to the appraisal award. I would reverse that part of the judgment in Case No. A17A1938, because the email Thompson's counsel sent to Homesite's counsel on July 1, 2013 satisfied the requirement that a plaintiff seeking to recover for an insurer's bad faith under OCGA § 33-4-6 (a) make "a demand for payment . . . against the insurer within 60 days prior to filing suit[.]" *BayRock Mtg. Corp. v. Chicago Title Ins. Co.*, 286 Ga. App. 18, 19 (648 SE2d 433) (2007).

The record shows that on July 1, 2013, Thompson's counsel sent an email to Homesite's counsel that stated the following:

> Please look closely at the appraisal award and the amount paid to Ms. Thompson pursuant to the award. Homesite made the unilateral decision to offset "previous payments" made to Ms. Thompson. However, the umpire report and appraisal award do not include such offsets. Particularly, Homesite deducted the previous damage check presented to Ms. Thompson and the payment for tree and debris removal. The tree and debris removal were not a part of the appraisal process, therefore *this offset is wholly improper and constitutes a breach of contract and bad faith failure to pay a covered loss*.

(Emphasis supplied.) This language was "sufficient to alert [Homesite] that it [was] facing a bad faith claim for a specific refusal to pay[.]" See *BayRock Mtg. Corp.*, supra at 20 (citations and punctuation omitted).

Thompson filed the instant action, which included her bad faith claim regarding the appraisal award, on May 19, 2015, well more than 60 days after the July 2013 email. The purpose of OCGA § 33-4-6 (a)'s demand requirement was met here — "to adequately notify an insurer that it is facing a bad faith claim so that it may make a decision about whether to pay, deny or further investigate the claim within the 60-day [statutory] deadline." *Primerica Life Ins. Co. v. Humfleet*, 217 Ga. App. 770, 772 (2) (458 SE2d 908) (1995).

The fact that the instant action is a renewal action does not make a difference. "The renewal suit is an action de novo." *Hobbs v. Arthur*, 264 Ga. 359, 360 (1994) (citation omitted). Homesite sought, and the trial court granted, summary judgment on the *renewal action*, not on Thompson's initial action. Because the renewal action clearly was filed more than 60 days after Thompson notified Homesite of her bad faith claim based on the appraisal award, Homesite was not entitled to summary judgment on that claim.

3