[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13352

_____

D.C. Docket No. 2:17-cv-00236-RWS

ANTHONY WAYNE HARDIGREE,

Plaintiff - Appellee,

versus

MARC LOFTON,
Statham Police Officer, individually,

Defendant - Appellant,

CITY OF STATHAM, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 6, 2021)

Before WILSON, NEWSOM, and ANDERSON, Circuit Judges.

WILSON, Circuit Judge:

Officer Marc Lofton appeals a district court order granting summary judgment to Anthony Wayne Hardigree on one claim and denying Lofton summary judgment on the same and other claims. Hardigree filed suit against Lofton under 42 U.S.C. § 1983 and Georgia state laws in 2017.[1] He brought claims for unlawful entry, false arrest, excessive force, malicious prosecution, false imprisonment, assault, and battery. His claims arose from an August 4, 2016, interaction with Lofton and other officers at his mobile home in Statham, Georgia. Both parties moved for summary judgment.

The facts of this case are disputed, and because there are dueling summary judgment motions, in some instances we must look at the facts in the light most favorable to Hardigree and in other instances in the light most favorable to Lofton. What is undisputed—and relevant to the challenge here—is that Lofton entered Hardigree's home without a warrant and without consent on August 4, 2016. Lofton deployed his taser on Hardigree and Hardigree was arrested and charged with disorderly conduct, obstruction, and simple battery. All charges were eventually dismissed. Hardigree then filed this suit.

---

[1] Hardigree brought claims against other defendants as well, but Lofton is the only defendant involved in this appeal.

The district court granted Hardigree's motion for summary judgment on the unlawful entry claim and denied it on all other claims. As to Lofton's motion for summary judgment, the court granted it for the federal malicious prosecution claim and denied it for all other claims. Lofton appealed. He argues that he is entitled to summary judgment because he did not violate Hardigree's constitutional rights, or alternatively, he is entitled to qualified immunity on the federal claims and official immunity on the state law claims.

After discussing the disputed facts, we first consider whether the district court erred by granting summary judgment to Hardigree on the unlawful entry claim. Next, we consider whether the district court's denial of summary judgment to Lofton on that claim was proper. Finally, we review the denial of summary judgment to Lofton on the false arrest, excessive force, and state law claims.

The facts of this case are heavily disputed and there are genuine issues of material fact as to whether Lofton lawfully entered Hardigree's home. Therefore, summary judgment is improper. We reverse the grant of summary judgment to Hardigree on the unlawful entry claim. The disputed facts also color the remaining claims. Because genuine issues of material fact prevent finding for Lofton as a matter of law, we affirm the district court's denial of summary judgment, qualified immunity, and official immunity on all other claims.

3

## I. Background

The following facts are undisputed: On August 4, 2016, Anthony Rodgers was the subject of a criminal drug investigation.[2] The police were surveilling a known drug house and observed Rodgers leave the house in a red Ford Explorer. An officer began to follow Rodgers but subsequently lost him. The officer radioed for assistance, and another officer soon spotted the red Explorer parked near a mobile home. The mobile home was Hardigree's residence.

As the officer pulled up, she observed Rodgers leaving Hardigree's home carrying a black bag. Once Rodgers got back into the Explorer, the officer approached the vehicle. While asking Rodgers for his license, the officer smelled marijuana. She subsequently searched the car. In the car, the officer discovered 29 grams of methamphetamines, some marijuana, and other drug paraphernalia.[3] The officer arrested Rodgers and a female passenger.

Lofton had since arrived at the scene. He was informed that Rodgers had been seen walking from Hardigree's home. Roughly twenty minutes later, Lofton

---

[2] Throughout the record, Rodgers's last name is spelled both "Rogers" and "Rodgers." We use "Rodgers" to mirror the district court's order.

[3] Where the drugs were found is a disputed fact. Lofton contends that the 29 grams of methamphetamines were found in the black bag that Rodgers was seen carrying from Hardigree's home—or at least that Lofton believed that to be the case when he approached the home. Hardigree contends that the drugs were not found in the bag. The police report states that the methamphetamines were found in a clear plastic bag outside of the bag Rodgers carried from the house. Alternatively, Hardigree contends that Lofton did not even know Rodgers carried a bag from the house when he approached the door.

and other officers approached the mobile home to conduct a knock-and-talk. Torrey Craig, Hardigree's wife, answered the door. When asked if she knew Rodgers, she said no but that her husband had spoken to him; she then went to get Hardigree.

The conversation was audio-recorded. The officers asked about Rodgers, and Hardigree told them he did not know Rodgers but that Rodgers came to the house looking for work and asked for a bottle of water. The officers expressed skepticism at the story—noting that Rodgers was a known drug dealer so they did not think he would be looking for a job. The officers asked to search the house and Hardigree declined, saying it was not his house but his sister's house. An officer asked Hardigree to call his sister. Hardigree sought to close the door and end the conversation but Lofton told Hardigree he was not free to leave and was being detained. Lofton told him to stay where he was (in the house). The other officer told him to come outside.

At this point the stories diverge. Hardigree says that he announced he was "going to go and get the phone" to call his sister and get permission for a search. He turned and walked away from the door. Lofton then barged through the door into Hardigree's home.

Lofton says that Hardigree "abruptly and without warning turned and rushed further into the home." Lofton entered and reached out to grab Hardigree to stop

5

him because he feared for his safety and believed Hardigree may be running to destroy evidence.

Per Hardigree, Lofton "immediately and without any warning deployed his taser." Hardigree "offered no resistance whatsoever to Lofton or the other officers." He fell face first on the ground screaming and begging Lofton to stop tasering him, but Lofton did not stop. One of the prongs of the taser went into Hardigree's penis. Lofton deployed the taser again through the prongs even though Hardigree was not resisting. Then, with Hardigree prone on the ground, Lofton detached the prongs and tasered him in drive stun mode. Lofton pushed the taser between Hardigree's legs up into his inner, upper thigh—close to his genitals. Lofton then arrested Hardigree.

According to Lofton, a brief struggle ensued once Lofton entered the home. After being shoved by Hardigree, Lofton unholstered his taser and deployed it while Hardigree was standing up and facing him. Lofton issued several commands to Hardigree to get on the ground and show his hands. After being tasered, Hardigree fell to the ground but his hands were underneath him. He failed to comply with continued commands to produce his hands and another officer struggled to place him in handcuffs. With Hardigree's hands near his waistband, Lofton used the taser in drive stun mode for compliance. Once Hardigree was

6

handcuffed, no additional force was used and Hardigree regained full bodily function.

## II. Standard of Review

We review a district court's grant or denial of summary judgment, including those based on qualified immunity, de novo. *See Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All evidence and factual inferences are viewed in the light most favorable to the non-moving party, and all reasonable doubts about the facts are resolved in favor of the non-moving party. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007); *see also Fils*, 647 F.3d at 1288 ("At summary judgment, we cannot simply accept the officer's subjective version of events, but rather must reconstruct the event in the light most favorable to the non-moving party and determine whether the officer's [actions were unlawful] under those circumstances.").

## III. Qualified Immunity Standard

Qualified immunity protects government officials who are sued under § 1983 for money damages in their individual capacities. Immunity is appropriate so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To avail oneself of qualified immunity, one must establish "that he or she acted within the scope of discretionary authority when the allegedly wrongful acts occurred." *Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1236 (11th Cir. 1992). If so, courts then must determine whether the facts, viewed "in the light most favorable to the party asserting the injury," show that "the officer's conduct violated a constitutional right" that was clearly established at that time. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). To determine if a right is clearly established, we ask whether the state of the law on the date of the alleged misconduct placed defendants on "fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

## IV. Unlawful Entry Claim

Hardigree claims that Lofton unlawfully entered his home in violation of the Fourth Amendment. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The "very core" of the Fourth Amendment is "the right of a man to retreat into his own home and there be free

from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511 (1961); *see also Florida v. Jardines*, 569 U.S. 1, 6 (2013) ("[W]hen it comes to the Fourth Amendment, the home is first among equals.").

The "chief evil" the Fourth Amendment protects against is a government agent's warrantless entry into a person's home. *See Payton v. New York*, 445 U.S. 573, 585 (1980). When an officer enters a person's home without a warrant and without consent, any resulting search or seizure violates the Fourth Amendment unless it was supported by probable cause and exigent circumstances. *See id.* at 587–90; *United States v. Tovar-Rico*, 61 F.3d 1529, 1534–35 (11th Cir. 1995); *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991) (en banc). When an officer "conducts a warrantless search or seizure inside the home," he bears the "burden of proving that his conduct was justified." *McClish v. Nugent*, 483 F.3d 1231, 1241 (11th Cir. 2007).

An officer has probable cause to search when there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Tobin*, 923 F.2d at 1510. Probable cause is determined based on the totality of the circumstances. *See Illinois v. Gates*, 462 U.S. 213, 230 (1983). In general, association with a known drug dealer, without more, is insufficient to establish probable cause. *See Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not,

9

without more, give rise to probable cause to search that person."). And "mere presence at a crime scene without more" is also not enough. *United States v. Virden*, 488 F.3d 1317, 1322 (11th Cir. 2007).

Exigent circumstances exist when "the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." *United States v. Burgos*, 720 F.2d 1520, 1526 (11th Cir. 1983). For example, courts have found exigent circumstances where officers entered a home to prevent the destruction of evidence, *United States v. Mikell*, 102 F.3d 470, 476 (11th Cir. 1996), to pursue a fleeing suspect, *United States v. Santana*, 427 U.S. 38, 42–43 (1976), and to break up a violent fight, *Brigham City v. Stuart*, 547 U.S. 398, 406 (2006).

The exigent circumstances exception is "particularly compelling in narcotics cases" because courts recognize that drugs can be easily and quickly destroyed. *United States v. Santa*, 236 F.3d 662, 669 (11th Cir. 2000). However, the presence of contraband alone does not give rise to exigent circumstances. *Id.*; *see also United States v. Lynch*, 934 F.2d 1226, 1232 (11th Cir. 1991).

Exigent circumstances may arise "when there is danger that the evidence will be destroyed or removed." *Tobin*, 923 F.2d at 1510. To determine if there is exigency, we must ask whether the facts would lead an objectively "reasonable, experienced agent to believe that evidence might be destroyed before a warrant could be secured." *Id.*

10

Additionally, an officer may constitutionally secure a dwelling based on probable cause "to prevent the destruction or removal of evidence while a search warrant is being sought." *Segura v. United States*, 468 U.S. 796, 810 (1984). In some circumstances, securing a residence can include refusing to allow a person to enter their residence alone or otherwise detaining them outside. *See Illinois v. McArthur*, 531 U.S. 326, 331–32 (2001).

Even so, in cases involving warrantless searches or seizures, law enforcement officers will be entitled to qualified immunity if they had even "arguable probable cause." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1251 (11th Cir. 2013). Arguable probable cause exists if "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed." *Swint v. City of Wadley*, 51 F.3d 988, 996 (11th Cir. 1995).

Both parties filed motions for summary judgment on the unlawful entry claim. The district court granted Hardigree's motion and denied Lofton's motion. Lofton argues that the district court erred. Not only did Lofton not violate Hardigree's constitutional rights, he contends, but even if he did, he is entitled to summary judgment based on qualified immunity. Accordingly, we first consider whether the district court erred by granting summary judgment on the unlawful entry claim to Hardigree. In doing so, we accept the facts in the light most

favorable to Lofton. We then consider whether the district court erred by denying summary judgment to Lofton, either on the merits or on qualified immunity. For that inquiry, we view the facts in the light most favorable to Hardigree.

## A. Hardigree's Summary Judgment Motion

Lofton claims that the district court erred by granting summary judgment to Hardigree. An officer can justify a warrantless entry by showing both that there was probable cause to believe evidence of a crime was in the house, and that exigent circumstances existed. *See Tobin*, 923 F.2d at 1510. Lofton contends that he has shown both. This not only defeats Hardigree's summary judgment motion, according to Lofton, but also means that the district court should have granted summary judgment to Lofton on this claim.

Lofton argues that he had probable cause to search the house and to secure it while he sought a warrant.[4] He based that determination on the following facts: 1) Rodgers was a known drug dealer under surveillance; 2) Rodgers left a suspected drug house to go to Hardigree's home; 3) Rodgers and Hardigree met briefly out of public view which is common for illegal drug transactions; 4) Rodgers exited Hardigree's home with a bag that was discovered to have 29 grams of

---

[4] Lofton also argues that he was conducting a lawful in-home *Terry* stop, which is permissible when there is both reasonable suspicion and exigent circumstances. *See Moore v. Pederson*, 806 F.3d 1036, 1039 (11th Cir. 2015); *see also Terry v. Ohio*, 392 U.S. 1 (1968). The district court relied on *Moore* to find that Lofton violated the Fourth Amendment even before he entered the home. But Hardigree's complaint only alleges unlawful *entry*, so we need not address that issue here. Rather, our analysis centers on the lawfulness of the entry itself.

methamphetamines in it; 5) Lofton believed Hardigree had a connection with drugs based on a previous arrest for a drug DUI outside of a known drug house; and 6) the reason Hardigree gave for Rodgers's visit (asking for work) was implausible.

Noting that these activities are commonly associated with drug dealing, Lofton points to a case, though it is unpublished and nonbinding, to argue that it was reasonable to believe that Rodgers supplied, traded, or sold drugs during his interaction with Hardigree and that evidence of the transaction could be found inside the home. *See United States v. Murray*, 659 F. App'x. 1023, 1026 (11th Cir. 2016) (per curiam) (where a search warrant was issued based on an affidavit that said (1) "several visitors entered and exited the house after only a few minutes, which the attesting officer believed was indicative of drug sales; and (2) that a traffic stop of a car leaving the house resulted in the seizure" of drugs, a gun, and more than "$500 in small bills").

Lofton further argues that he could lawfully detain Hardigree while seeking a warrant because he had probable cause to believe drugs were in the home and Hardigree knew a search was imminent. Courts have noted that drugs can easily be destroyed or disposed of when a suspect is given the opportunity and knows a search is imminent. *See McArthur*, 531 U.S. at 332. Lofton contends that was the case here. On that basis, the restraint he imposed on Hardigree (to remain at the door) while attempting to secure a warrant was lawful.

13

Once Hardigree fled into the home, Lofton argues that exigent circumstances permitted him to follow. For support Lofton cites *Santana*, where the Supreme Court held that an officer did not violate the Fourth Amendment when he arrested a suspect who had fled from her doorway into her home. 427 U.S. at 43. The Court reasoned that when the suspect was standing in her doorway, she was in a "public" place—making a warrantless arrest lawful. *Id.* at 42. The act of retreating into her home initiated a "hot pursuit," and justified a warrantless arrest in her house. *Id.* at 42–43. Lofton equates *Santana* to the situation here: his detention of Hardigree at the doorway was lawful, so when Hardigree fled into the house—raising destruction of evidence and officer safety concerns—his entry into the home, in hot pursuit of Hardigree, was similarly lawful. Thus, because probable cause and exigent circumstances existed, Lofton argues that he did not violate the Fourth Amendment.

Hardigree disputes some of the facts that led Lofton to believe there was probable cause, most notably whether the drugs were found in the bag that Rodgers carried from Hardigree's home and whether Hardigree "fled" into his home. Hardigree also argues that the DUI Lofton is referring to was for lawfully prescribed medications and was dismissed. He alleges that Lofton knew both of those facts, so he could not reasonably conclude that Hardigree was involved with

narcotics. But when considering Hardigree's motion for summary judgment on his unlawful entry claim, we must view the facts in the light most favorable to Lofton.

Hardigree also argues that association with a known drug dealer is not enough to establish probable cause, so Lofton did not have probable cause here. *See Ybarra*, 444 U.S. at 91. But Lofton did not rely only on the fact that Rodgers was near Hardigree or that Rodgers was a known drug dealer. Rather, Lofton assessed the totality of the circumstances: the existence of the drugs, that they were found in a bag just after Rodgers left from a short visit at Hardigree's home, and that Hardigree's explanation of the reason for Rodgers's visit was suspicious based on what Lofton knew about both Rodgers and Hardigree. Lofton then interpreted Hardigree's fleeing, after hearing that the officers wanted to search the house, as an indication that evidence could be destroyed. Taken together, a reasonable jury could find that this constitutes probable cause—or at least arguable probable cause—to believe a drug transaction had occurred and evidence was inside. Once Hardigree fled into the house, a jury could find exigent circumstances existed to enter. That is all Lofton must show at this stage to defeat Hardigree's motion. *See Feliciano*, 707 F.3d at 1251.

The district court erred in its analysis of this claim because it did not view the facts in the light most favorable to Lofton. Though the order acknowledges that the facts must be taken in that light, the district court seems to quibble with

15

Lofton's version of the facts—and seemingly draws inferences in favor of Hardigree. Granted, Lofton included in his summary judgment brief at least one fact that cannot constitutionally be considered when determining whether reasonable suspicion or probable cause exist: the fact that Hardigree did not consent to a search. *See United States v. Boyce*, 351 F.3d 1102, 1110 (11th Cir. 2003). But that aside, Lofton provided enough facts, as discussed above, to constitute at least arguable probable cause. For that reason, the district court erred in granting summary judgment to Hardigree on the unlawful entry claim. We reverse the district court to that extent.

### B. Lofton's Summary Judgment Motion

However, Lofton is not entitled to summary judgment on the unlawful entry claim either—even under qualified immunity. Once an official asserting qualified immunity establishes that he was acting within his discretionary authority—which is not in question here—the burden shifts to the plaintiff to show that qualified immunity is improper. *Skop*, 485 F.3d at 1136–37. This requires showing that the defendant's conduct violated a statutory or constitutional right and that the right was "clearly established." *Saucier*, 533 U.S. at 201. When considering Lofton's motion for summary judgment, we must view the facts in the light most favorable to Hardigree, the non-movant. *Skop*, 485 F.3d at 1136.

16

Qualified immunity recognizes that "reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier*, 533 U.S. at 205. "[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials . . . should not be held personally liable." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Therefore, even if we decide that an officer did not have probable cause, we consider whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[ ] could have believed that probable cause existed." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). If so, the officer had arguable probable cause, which is "all that is required for qualified immunity." *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001) (per curiam).

Though Lofton has asserted arguable probable cause—which would entitle him to qualified immunity—he relies on material facts that are disputed by Hardigree. Hardigree's version of the facts tell a different story and prevent a finding of even arguable probable cause.

As discussed above, the most notable disputes involve whether the drugs were found in the black bag and whether Hardigree "fled" into the home. But those are not the only disputed facts: Hardigree contends that Lofton did not even know that Rodgers was carrying a bag when he walked out of Hardigree's home and that

17

Lofton did know Hardigree's DUI was for lawfully prescribed medications and was dismissed. Hardigree also contends that there was nothing suspicious about him or his house; per Lofton's deposition, he initially thought Rodgers might have burglarized Hardigree's home. Finally, Hardigree argues that an officer told him to call his sister for permission, and that he announced he was going to do so when he walked away from the door. Thus, he was following police orders when he moved from the door, not disobeying them.

Crediting Hardigree's version of the facts, Lofton lacks even arguable probable cause. If the drugs were not found in the bag, as Hardigree asserts, it becomes much less clear what is suspicious about Hardigree's home except its proximity to drugs and a known drug dealer. That alone is not enough to constitute arguable probable cause. *Cf. Virden*, 488 F.3d at 1321.

Additionally, if the drugs were not in the bag, the interaction between Hardigree and Rodgers appears less like a common drug transaction and more like a quick conversation or visit amongst friends—especially considering that the police had been surveilling Rodgers and knew him to conduct drug deals exclusively at his own house. *See Ybarra*, 444 U.S. at 91.

If Hardigree's prior DUI was not related to narcotics and Lofton was aware of that, there is nothing to tie Hardigree himself to drugs either. Under Hardigree's version of the facts, Lofton only knows that a drug dealer visited Hardigree's home

and that Hardigree's explanation of the reason for the visit seems unlikely. That does not constitute probable cause and no reasonable officer would believe that it does. *See generally Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997) (explaining that the court must determine that "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed" to grant qualified immunity); *see also Gates*, 462 U.S. at 238 (explaining that probable cause requires a "fair probability that contraband or evidence of a crime will be found in a particular place"). Though probable cause "is incapable of precise definition," we know that "the belief of guilt must be particularized with respect to the person to be searched or seized." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). Here, any belief of guilt was not particularized to either Hardigree or his home.

Under Hardigree's version of the facts, Lofton also lacked exigent circumstances, making his entry into the home plainly unlawful. *See Payton*, 445 U.S. at 585. Hardigree contends that he did not flee or furtively move into his home when he sought to invoke his Fourth Amendment right and close his door. Rather, he announced to the officers what he was doing (calling his sister to obtain permission for a search) and then walked inside at a normal pace. Hardigree explains that his announcement about calling his sister can be heard on the audio

19

recording, and that he only did so because the officers asked him to call his sister for permission.

Such acts do not even arguably arouse the same concerns about officer safety or destruction of evidence that "furtively fleeing" into the house do. It does not create the kind of "urgent need for immediate action" that existed in cases like *Santana* or *Mikell*. *See McClish*, 483 F.3d at 1240–41. And because Hardigree says he was going inside to comply with the orders of an officer, the act is not suspicious.

Assuming Hardigree's version of the facts to be true, a reasonable officer would not believe that Hardigree was going to destroy alleged evidence—and would have no reason to even believe there was evidence inside to destroy. Such a finding is even more unreasonable considering other officers had already let Hardigree's wife retreat into the house alone at the beginning of the knock-and-talk.[5]

---

[5] Lofton's cite to *Minor v. State*, 680 S.E.2d 459 (Ga. Ct. App. 2009), does not convince us that his conduct was arguably lawful. The cases are wholly distinguishable when we take the disputed facts in the light most favorable to Hardigree—which we must at this stage. First, in *Minor*, the officers came to the house to investigate a report that Minor's children were being exposed to illegal drug use at home. *Id.* at 461. Here, the officers did not come to investigate Hardigree, nor did they know anything about Hardigree when they arrived because they were there pursuing Rodgers. Next, the officers smelled marijuana on Minor. *Id.* In Hardigree's case, the officers said in their deposition that they did not smell any drugs on Hardigree or in his house. Finally, Minor "bolted into his home and shut the door," prompting pursuit by the officers. *Id.* at 462. Here, Hardigree contends that he walked into the house pursuant to officer orders to call his sister.

Protecting against warrantless government entry into a person's home is the core of the Fourth Amendment. *See Payton*, 445 U.S. at 585; *Jardines*, 569 U.S. at 6. It was clearly established long before Lofton arrived at Hardigree's door that without a warrant or consent, or probable cause and exigent circumstances, he could not enter the home. *See Payton*, 445 U.S. at 587–90; *Tovar-Rico*, 61 F.3d at 1534–35. Based on Hardigree's version of the facts, Lofton lacked all of these.

Accordingly, there are genuine disputes of material fact as to whether Lofton had even arguable probable cause, or exigent circumstances, justifying his entry into Hardigree's home. We are constrained to conclude that summary judgment—even based on qualified immunity—is not appropriate on this claim. *See* Fed. R. Civ. P. 56(a); *see also Carlin Commc'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986) ("[T]he court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied."). These factual disputes can only be sorted out by a jury.

## V. False Arrest Claims

Lofton next argues that the district court also erred by denying him summary judgment on the false arrest claims. For this claim, and all remaining claims, we view the facts in the light most favorable to Hardigree. *See Skop*, 485 F.3d at 1136.

21

"There is no question that an arrest without probable cause to believe a crime has been committed violates the Fourth Amendment." *Madiwale*, 117 F.3d at 1324. However, qualified immunity protects an officer from a false arrest claim if arguable probable cause existed for the arrest. *See Storck v. City of Coral Springs*, 354 F.3d 1307, 1315 (11th Cir. 2003). Arguable probable cause for any offense would bar Hardigree's false arrest claim on all charges. *See Grider v. City of Auburn*, 618 F.3d 1240, 1257 (11th Cir. 2010); *see also Marx v. Gumbinner*, 905 F.2d 1503, 1505–06 (11th Cir. 1990).

In determining whether probable cause exists for an arrest, we consider whether the arresting officer's actions were "objectively reasonable based on the totality of the circumstances." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004), *abrogated on other grounds by Williams v. Aguirre*, 965 F.3d 1147 (11th Cir. 2020). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (internal quotation mark omitted).

Whether an officer possesses probable cause or arguable probable cause to arrest depends on the elements of the alleged crime and the operative facts. *See Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004). Hardigree was

22

arrested and charged with disorderly conduct, obstruction, and simple battery. We address each offense in turn. But because no arguable probable cause existed for any of these offenses, we affirm the district court's denial of summary judgment and qualified immunity on these claims.

## A. Disorderly Conduct

Disorderly conduct occurs when a person "[a]cts in a violent or tumultuous manner toward another person whereby such person is placed in reasonable fear of the safety of such person's life, limb, or health." O.C.G.A. § 16-11-39(a)(1). Lofton argues that Hardigree's "spontaneous flight caused him to be concerned for his safety," and that Hardigree "did not convey his intentions to the officers."

But Lofton errs by assuming that his facts are undisputed. Hardigree denies any "spontaneous flight" from the door. He contends that he announced where he was going before moving away from the door, which can be heard on the audio recording, and that he did so because an officer told him to. Accordingly, a genuine issue of material fact exists as to whether Hardigree fled into the house. As a result, we cannot say at this stage that there was even arguable probable cause for arrest for disorderly conduct.

## B. Obstruction

In Georgia, "a person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties

23

shall be guilty of" the misdemeanor of obstruction. O.C.G.A. § 16-10-24(a). "[F]light, or attempted flight, after a command to halt constitutes obstruction of an officer." *Tankersley v. State*, 273 S.E.2d 862, 866 (Ga. Ct. App. 1980).

Lofton argues that Hardigree obstructed orders to stay put or come outside when he fled into the house. Under the language of this statute, if Hardigree had refused to obey a lawful order to remain where he was and instead fled into the home, Lofton may well have been able to arrest him. But Hardigree presented evidence sufficient to raise a genuine issue of material fact concerning the lawfulness of the order. The lawfulness of Lofton's command rests on questions of fact about whether he had probable cause or arguable probable cause to detain Hardigree at the door.[6]

Hardigree also argues that he had conflicting orders from the officers because they had ordered him to get his phone and call his sister. When he moved from the door, he contends that he was not fleeing and had announced what he was doing. On those facts, Lofton did not have arguable probable cause to arrest him for obstruction. Therefore, summary judgment is inappropriate here. Determining what transpired, "on this highly disputed factual record, [is] exactly the sort of factual, credibility-sensitive task best left to the jury." *See Skop*, 485 F.3d at 1141.

---

[6] The Eleventh Circuit allows for *Terry* stops in the home when there is reasonable suspicion and exigent circumstances. *See Moore*, 806 F.3d at 1039. But the factual disputes also affect whether either of those existed at this point in the interaction (before Hardigree retreated into the home).

24

## C. Battery

A simple battery is committed when someone "[i]ntentionally makes physical contact of an insulting or provoking nature with the person of another." O.C.G.A. § 16-5-23(a)(1). Lofton claims that Hardigree shoved him after Lofton entered the home. But Hardigree disputes this fact, saying he never shoved or even touched Lofton. Under Hardigree's version of the facts, there is no arguable probable cause to support an arrest for battery. We cannot weigh their conflicting testimony at this stage. *Carlin Commc'n, Inc.*, 802 F.2d at 1356. Summary judgment must be denied.

## VI. Excessive Force Claim

Lofton contends that the district court erred by denying him summary judgment on Hardigree's excessive force claim.[7] He argues that his use of force was justified because Hardigree attempted to flee, did not comply with his commands, and Lofton was not familiar with his circumstances. We disagree with

---

[7] Lofton also contends that an excessive force claim only exists if Lofton had arguable probable cause to arrest. *See Bashir v. Rockdale County*, 445 F.3d 1323, 1332 (11th Cir. 2006) ("[W]here an excessive force claim is predicated solely on allegations the arresting officer lacked the power to make an arrest, the excessive force claim is entirely derivative of, and is subsumed within, the unlawful arrest claim."). But here, Hardigree argues not only that *any* force was excessive because of the lack of probable cause, but also that even if there was probable cause, the force was constitutionally unreasonable. Because the question of arguable probable cause has not been answered and Hardigree also asserts an independent claim, we cannot say this claim is subsumed by the unlawful arrest claims.

Lofton and affirm the district court's denial of summary judgment to Lofton on the excessive force claim.

The Fourth Amendment's freedom from unreasonable seizures includes the "right to be free from the use of excessive force in the course of an arrest." *Ferraro*, 284 F.3d at 1197. To determine whether the force used was reasonable, a court must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted). The inquiry is objective. *See id.* at 397.

A number of factors can contribute to this determination: the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. Additionally, courts can consider if the person subject to force is violent or dangerous, the possibility that they may be armed, "and the number of persons with whom the police officers must contend at one time." *Jackson v. Sauls*, 206 F.3d 1156, 1170 n.18 (11th Cir. 2000). A court must view the use of force "from the perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 396. Finally, courts must view the interaction with the understanding that "officers are often forced to make split-second judgments—in

circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397.

Again, the facts here are disputed. Hardigree contends that he did not resist being put in handcuffs, shove or touch Lofton, or square up to fight. Rather, he can be heard on the audio recording pleading not to be tasered again.

We must consider what an objectively reasonable officer in Lofton's situation would have believed, taking as true Hardigree's testimony. *See Brown v. City of Huntsville*, 608 F.3d 724, 739 (11th Cir. 2010). Repeated uses of the taser through the prongs and again in drive stun mode on or around Hardigree's genitals would be excessive. Certainly, once Hardigree was on the ground, immobilized, being arrested for a minor incident, and posed no threat, Lofton's decision to again deploy the taser would be excessive force that violated Hardigree's constitutional rights.

It is clearly established that "[u]nprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions" violates a person's Fourth Amendment right. *See Fils*, 647 F.3d at 1289, 1292 (holding that officers should have known that tasering a suspect who "committed at most a minor offense; [ ] did not resist arrest; [and] did not threaten anyone" violated the Fourth Amendment). The district court was correct to deny summary judgment on this claim.

27

## VII. State Law Claims

Hardigree also brought four state law claims against Lofton: false imprisonment, malicious prosecution, assault, and battery. Lofton argues that the district court erred in denying him summary judgment on these claims based on the merits, or alternatively based on official immunity.

Lofton's only argument for summary judgment on the merits of these claims is that he had probable cause or arguable probable cause. The essential elements of false imprisonment in Georgia "are [an] arrest or [a] detention and the unlawfulness thereof." *Kline v. KDB, Inc.*, 673 S.E.2d 516, 518 (Ga. Ct. App. 2009). In the context of a warrantless arrest, probable cause and an exception to the warrant requirement (like the offense being committed in the officer's presence) are required for the arrest to be lawful. *See Collins v. Sadlo*, 306 S.E.2d 390, 391–92 (Ga. Ct. App. 1983); O.C.G.A. § 17-4-20(a)(2)(A). Because the alleged events happened in front of Lofton, a showing of probable cause would defeat Hardigree's false imprisonment claim. It would also defeat the malicious prosecution claim. *See* O.C.G.A. § 51-7-40 (defining malicious prosecution in part as a criminal prosecution carried on "without any probable cause").

Similarly, Lofton argues that if he had probable cause to make a lawful arrest, he would be entitled to summary judgment on the assault and battery claims because an officer is entitled to use force reasonably necessary to effectuate an

arrest. *See Mayfield v. State*, 623 S.E.2d 725, 727 (Ga. Ct. App. 2005). Because probable cause and arguable probable cause depend on disputes of material fact, as explained throughout this opinion, summary judgment is improper on the merits of these claims.

However, Lofton also contends that he is entitled to official immunity at this juncture. In Georgia, a government official "may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions." Ga. Const. art. 1, § 2, ¶ IX(d). There is no dispute here that Lofton was performing discretionary duties as a state official during his encounter with Hardigree. Thus, the only question is whether Lofton acted with actual malice or intent to cause injury. Actual malice, in this context, "requires a deliberate intention to do wrong." *Adams v. Hazelwood*, 520 S.E.2d 896, 898 (Ga. 1999). Proof of ill will alone is not enough. *Id.*

Hardigree offers several facts to support his allegations of actual malice. Most notably, in his deposition, Lofton testified that he did not have probable cause to arrest Hardigree when he entered the house, but that he entered anyway. Additionally, Lofton tasered Hardigree in the penis with the prongs from a short distance, and then again tasered him in his upper, inner thigh in drive stun mode after Hardigree had stopped moving. Hardigree also asserts that Lofton lied about Hardigree pushing him and resisting arrest, and then arrested him without any

conceivable basis for doing so. Hardigree cites to a case where official immunity was denied when a jury could find that an officer acted with "knowledge that [a suspect] had not committed the crimes for which they accused her." *See Bateast v. Dekalb County*, 572 S.E.2d 756, 758 (Ga. Ct. App. 2002).

At this stage, Hardigree has asserted enough facts to allow a jury to find that Lofton intended to do wrong when he continually tasered Hardigree in the groin and arrested him on charges that, according to Hardigree, had no basis. Because a jury could find malice, the district court was correct to deny official immunity to Lofton.

## VIII. Conclusion

In conclusion, the district court erred by granting summary judgment to Hardigree on unlawful entry. But taking the facts in the light most favorable to Hardigree, the district court correctly denied summary judgment, qualified immunity, and state law immunity to Lofton on that claim and the remaining claims. Lofton and Hardigree offer very different versions of the interaction. These questions belong in front of a jury.

**REVERSED IN PART; AFFIRMED IN PART.**

ANDERSON, Circuit Judge, concurring:

I concur in the result.