[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-11387

Non-Argument Calendar

_____

RICKY TURNER,

Plaintiff-Appellant,

*versus*

CMFG LIFE INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 6:21-cv-00030-JRH-BKE

_____

Before ROSENBAUM, JILL PRYOR, and GRANT, Circuit Judges.

PER CURIAM:

Georgia law imposes statutory penalties on insurance companies who, in bad faith, refuse to pay a policyholder's claim within sixty days of a demand. O.C.G.A. § 33-4-6. CMFG Life Insurance Co. failed to pay Ricky Turner's claims within the prescribed period. But because Turner failed to present evidence sufficient to permit a reasonable jury to find bad faith on the part of CMFG, we affirm the district court's grant of summary judgment. We also hold that the district court did not abuse its discretion by admitting the testimony of CMFG's expert witness.

**I.**

Ricky Turner's wife passed away on November 22, 2019. Some four months earlier, she had fallen and hit her head on the corner of her kitchen island, which led to her eventual death. At the time of her death, she was covered by two life insurance policies issued by CMFG, both listing her husband as the beneficiary. Both policies insured Turner against "accidental death," defined as a death "resulting from an injury, and occurring within 1 year of the date of the accident causing the injury." (emphasis omitted).

All agree that CMFG paid Turner, in full, under both policies. At issue, however, is the timing. CMFG received Turner's initial claims forms and his wife's death certificate on April 14, 2020. CMFG's claims examiner reviewed Turner's file on May 14 and

requested additional documentation the same day.  On May 20, CMFG received 1,044 additional pages of medical records from Turner.

On June 5, CMFG sent Turner's file to an outside nurse consultant for review, to determine whether Turner's wife's death was covered by the insurance policies.  The nurse returned a report the same day, opining that Turner's wife's death was not caused by an accident, which would render Turner ineligible for any insurance payout.  CMFG did not immediately act on this recommendation.  Instead, a claims examiner re-reviewed Turner's file for evidence of a qualifying accident.  CMFG also attempted to contact the doctor who had certified Turner's wife's death, to no avail.

On August 31, CMFG referred Turner's claims to a second consultant—Dane Street, a medical consulting firm—for another opinion.  Due to a technical error, Turner's claims were not actually submitted to Dane Street until September 16.  Dane Street's report was received one month later, on October 19.  It found that Turner's wife's death was caused by a qualifying accident: her fall and resulting head injury.  That same day, CMFG's claims examiner recommended that Turner's claims be paid—Turner's payments were sent on October 30.

In the meantime, on July 17, Turner, frustrated with the pace at which CMFG was processing his claims, sent CMFG two demand letters, one for each policy.  The letters cited O.C.G.A. § 33-4-6 and requested that payment be made within sixty days.

That did not happen. In March 2021, Turner brought suit alleging that CMFG had exceeded the statutory period in bad faith, entitling him to statutory penalties. During discovery, the district court admitted, over Turner's objection, testimony from CMFG's expert witness on whether CMFG had complied with industry custom during its review of Turner's claims. The district court then granted summary judgment for CMFG. Turner appeals.

## II.

We review the district court's order granting summary judgment de novo. *Hardigree v. Lofton*, 992 F.3d 1216, 1223 (11th Cir. 2021). "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). We view the evidence in the light most favorable to Turner, the nonmoving party. *Id.*

We review a district court's rulings on the admissibility of evidence for abuse of discretion. *Great Lakes Ins. SE v. Wave Cruiser LLC*, 36 F.4th 1346, 1353 (11th Cir. 2022). The abuse of discretion standard allows a "range of choice for the district court, so long as that choice does not constitute a clear error of judgment" or is not based on the wrong legal standard. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1104 (11th Cir. 2005) (quotation omitted). Even a clearly erroneous evidentiary ruling, however, will be affirmed if harmless. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016). We will reverse only if the moving party demonstrates that the error had "a substantial

prejudicial effect." *Goulah v. Ford Motor Co.*, 118 F.3d 1478, 1483 (11th Cir. 1997).

## III.

## A.

O.C.G.A. § 33-4-6 is not a strict liability statute. An insurance company that fails to make a payment on a covered claim within sixty days of a demand faces a penalty only if its nonpayment was motivated by bad faith. *Lavoi Corp. v. Nat'l Fire Ins. of Hartford*, 293 Ga. App. 142, 146 (2008); *see* O.C.G.A. § 33-4-6(a). "Bad faith" is defined by Georgia courts as "any frivolous and unfounded refusal in law or in fact to comply with the demand of the policyholder to pay according to the terms of the policy." *Georgia Farm Bureau Mut. Ins. Co. v. Williams*, 266 Ga. App. 540, 542 (2004) (quotation omitted).

Under Georgia law, "[p]enalties and forfeitures are not favored. The right to such recovery must be clearly shown." *S. Gen. Ins. Co. v. Kent*, 187 Ga. App. 496, 498 (1988) (quotation omitted). Because O.C.G.A. § 33-4-6 imposes a penalty, its requirements "are strictly construed." *Villa Sonoma at Perimeter Summit Condo. Ass'n v. Com. Indus. Bldg. Owners All., Inc.*, 349 Ga. App. 666, 670 (2019). If the insurer "has any reasonable ground to contest the claim" and if "there is a disputed question of fact" regarding the validity of the claim, bad faith penalties are not authorized. *Allstate Ins. Co. v. Smith*, 266 Ga. App. 411, 413 (2004) (quotation omitted).

Turner, as the insured party, bears the burden of proving CMFG's bad faith. *Georgia Farm Bureau Mut. Ins. Co.*, 266 Ga. App. at 542. In order to avoid summary judgment, Turner was obligated to provide evidence of CMFG's bad faith capable of putting the issue into genuine dispute. *Id.* He did not.

Turner argues first that CMFG's failure to read or respond to his demand letters within sixty days of receipt is evidence of bad faith. As a factual matter, the record does not support Turner's assertion that CMFG ignored his entreaties. CMFG's notes indicate employees of CMFG received and responded to calls and emails from Turner and his attorney both before receipt of the letters and during the sixty-day period.

Even accepting the contention as true on its face, however, Turner cites no legal authority supporting an inference of bad faith from a failure to respond to a demand letter. To the contrary, Georgia courts have described "the purpose of the statute's demand requirement" as providing notice to "an insurer that it is facing a bad faith claim so that it may make a decision about whether to pay, deny or further investigate the claim within the 60-day deadline." *Primerica Life Ins. Co. v. Humfleet*, 217 Ga. App. 770, 772 (1995). Having already commenced an investigation into Turner's claims well before receiving his demand letters—an investigation which continued through the entire sixty-day statutory period—CMFG's alleged failure to reply has no logical bearing on whether its nonpayment was conducted in bad faith.

23-11387               Opinion of the Court                    7

Next, Turner argues that the decision to investigate his claims at all constitutes bad faith on the part of CMFG.  Here, he points to his wife's death certificate as proof positive that the claims were payable.  But an insurer is entitled to conduct a reasonable investigation of claims made upon it.

What's more, neither party disputes that, at the time CMFG received Turner's demand letters, CMFG possessed a report from a nurse consultant opining that Turner's claims were not payable. The claims examiner responsible for Turner's file did not trust that report, concluding that further investigation was necessary to either corroborate or rebut the opinion.  CMFG thus was faced with a "disputed question of fact" regarding the merits of Turner's claims and "reasonable ground to contest," precluding a finding of bad faith.  *Allstate Ins. Co.*, 266 Ga. App. at 413 (quotation omitted). Further investigation was all-but-required of a responsible insurer. Turner has not offered any evidence to suggest that CMFG sought the nurse consultant's opinion in bad faith.

Turner complains that the investigation of his claims took longer than sixty days to complete.  There is no statutory requirement that the investigation of a claim finish within sixty days.  The purpose of the demand requirement is to prompt the insurer to "make a decision about whether to pay, deny or further investigate the claim within the 60-day deadline." *Primerica Life Ins. Co.*, 217 Ga. App. at 772.  CMFG was not sitting on its hands—it had clearly made the decision to "further investigate" Turner's

claims within the sixty-day deadline. That the investigation happened to take longer is not alone evidence of bad faith.

Turner chafes at the district court's refusal to consider CMFG's alleged violations of the Georgia Unfair Claims Settlement Practices Act as evidence of bad faith under O.C.G.A. § 33-4-6. Turner cites no authority for using the Act in this manner. In fact, the Act explicitly disavows a private right of action. O.C.G.A. § 33-6-37. Importing the Act's prohibitions into the statutory definition of "bad faith" in O.C.G.A. § 33-4-6 would thus constitute an end-run around its statutory scheme, which vests enforcement authority exclusively in the Georgia Commissioner of Insurance. O.C.G.A. § 33-6-35; *see Armstead v. Allstate Prop. & Cas. Ins. Co.*, No. 14-cv-586, 2016 WL 4123838, at *6–7 (N.D. Ga. July 1, 2016). Absent Georgia authority to the contrary, this Court declines Turner's invitation to conduct our own statutory innovation.

Finally, Turner objects to the district court mentioning in its opinion that CMFG eventually paid him under both policies. True, O.C.G.A. § 33-4-6 provides that the "action for bad faith shall not be abated by payment after the 60 day period." But Turner brushes aside the district court's explicit caveat that the fact of late payment was "irrelevant" to its analysis. Further, whether or not the district court considered the late payment—and absent any indication to the contrary, we take the court at its word that it did not—Turner still failed to advance affirmative evidence for bad faith.

Ultimately, Turner's position amounts to an argument that failure to pay a claim within the statutory period alone constitutes

bad faith per se.  This is an untenable reading of the statute.  It writes the requirement of bad faith out of the cause of action altogether, conflating it with the separate element of nonpayment.  A bad faith refusal is a "frivolous and unfounded refusal" to pay—not merely a refusal for any reason at all.  *Georgia Farm Bureau Mut. Ins. Co.*, 266 Ga. App. at 542 (quotation omitted).

Turner did not advance enough evidence to put the issue of bad faith in dispute.  This alone permits summary judgment against him.  CMFG's countervailing evidence of its own good faith seals the deal.  Accordingly, we affirm the district court's grant of summary judgment for CMFG.

## B.

The district court admitted testimony from CMFG's expert, Barbara Mueller, as to whether CMFG had adhered to prevailing industry practices.  The opinion in question reads, in full:

> CMFG's investigation, evaluation, and payment of Plaintiff Ricky L. Turner's ("Mr. Turner") claims for accidental death insurance benefits was reasonable, consistent with the terms and conditions of the insurance policies and life insurance industry standards and practices. There was no unreasonable denial or withholding of benefits.

On appeal, Turner objects to the opinion's use of the words "reasonable" and "unreasonable," claiming that these words indicate that the opinion inappropriately embraces an ultimate issue properly left to the factfinder.  We disagree.  Both parties

agree that Mueller validly based her opinion on her extensive experience working with insurance industry standards. Compliance with those standards is a question of fact, not law. It may be evidence for, but is not synonymous with, good faith. And in any event, while it is true that an expert may not simply instruct the factfinder to reach a legal conclusion, the fact that a witness's well-founded opinion incidentally addresses an ultimate issue in the case does not alone automatically render the testimony objectionable. *United States v. Campo*, 840 F.3d 1249, 1266–67 (11th Cir. 2016); *see* Fed. R. Evid. 704(a). The district court did not abuse its discretion by admitting the Mueller testimony.[1]

⋆    ⋆    ⋆

We **AFFIRM** the district court's grant of summary judgment.

---

[1] Even if the district court had committed error here, it would have been harmless because of Turner's failure to affirmatively advance evidence of bad faith.