300 Ga. 670
FINAL COPY

S16A1527. LA CHONA, LLC v. ABERRA et al.

HINES, Chief Justice.

Appellant La Chona, LLC, ("La Chona") brought this quiet title action in the Superior Court of DeKalb County, asserting that it was the owner of property located in the City of Decatur, because it had purchased the property at a tax sale and had barred the right of other interested persons, including appellee Haddis Aberra ("Aberra"),[1] to redeem the property pursuant to barment notices that it had sent those parties under OCGA § 48-4-45. The trial court ruled in favor of Aberra, concluding that, when La Chona sent the barment notices, it did not hold a record interest in the property, was therefore not authorized by law to send the notices, and, accordingly, had not barred Aberra's right to redeem the property. The trial court also ruled that, even if La Chona had been authorized to send the barment notices, La Chona had waived the

---

[1] Haddis Aberra died while the appeal was pending, and the executors of his estate, Maare Aberra and Shefena Gezahagn, were substituted as appellees in June 2016. See Rule 28 of the Supreme Court of Georgia.

requirement of tender as to Aberra. For the reasons that follow, we affirm the trial court's ruling that La Chona did not have the right to send the barment notice to Aberra, and because of that ruling, we need not decide the tender issue.

1. *Background.* Our evaluation of this case requires a detailed review of what the record shows regarding the tax sale, the events relating to the property after that sale, and a review of the law that governs those events.

In 2007, the property was owned by Josephine Hose in fee simple. She died later that year, leaving the property to her two sons, Willie and Wesley Hose, in undivided equal shares. Willie was appointed executor of his mother's estate, but he died in 2009 without executing a deed of assent to convey title to himself and Wesley. In 2010, Aberra bought the interests in the property that Wesley Hose and two of Willie Hose's heirs held by virtue of the bequests from Josephine Hose, so that, in total, Aberra gained a seven-ninths interest in the property. Aberra petitioned the probate court to appoint an administrator to execute deeds of assent conveying the property from the estate of Josephine Hose to Wesley Hose and the heirs of Willie Hose. As of August 2010, that had not occurred.

In August 2010, with the estate of Josephine Hose still holding title to the

property, the City of Decatur sold the property for the nonpayment of 2009 property taxes. La Chona was the highest bidder, purchasing the property for $40,000. The tax deed was filed on September 8, 2010, and lists the defendant in fi. fa. as the estate of Josephine Hose. La Chona, as the tax sale purchaser, did not obtain absolute title to the property, but rather obtained a defeasible fee interest subject to the statutory rights of other interested persons to redeem the property. See *Land USA, LLC v. Ga. Power Co.*, 297 Ga. 237, 239 (773 SE2d 236) (2015); OCGA § 48-4-40 (providing that "the defendant in fi. fa. or any person having any right, title, or interest in or lien upon such property may redeem" the property); OCGA § 48-4-41 (providing that a "creditor of the defendant in fi. fa. who has no lien" may redeem the property).

At some point before the tax deed was recorded, Forum IRA, LLC, ("Forum"), paid La Chona $48,000 to redeem the property. See OCGA § 48-4-42 (providing that the amount that must be paid to redeem property includes, among other things, "the amount paid for the property at the tax sale" and the amount of "[a]ny taxes paid on the property by the purchaser after the sale"). On the same day that the tax deed was recorded, La Chona executed a quitclaim deed of redemption. The redemption deed says that Forum was a creditor of

3

Josephine Hose, "the defendant in fi. fa.," and it conveyed the property to Josephine.[2]  Forum obtained a lien on the property as a redeeming creditor. "[T]he amount paid by the redeeming creditor becomes a first lien on the property.  The redeeming creditor then has first priority to repayment — a 'super-lien' for the redemption price —  and may proceed to foreclose against the property based upon that lien." *National Tax Funding, L.P. v. Harpagon Co.*, 277 Ga. 41, 42-43 (586 SE2d 235) (2003) (footnote omitted).  See OCGA § 48-4-43 ("the amount expended by the creditor [to redeem the property] . . . shall constitute a first lien on the property and, if the quitclaim deed provided for in Code Section 48-4-44 is recorded as required by law, shall be repaid prior to any other claims upon the property").

Based on its "super-lien," Forum filed an action on December 3, 2010, against Aberra and others who might have had an interest in the property.  It sought a judgment in the amount of its lien plus interest and sought to foreclose on the property to satisfy the lien.

Over three years later, on January 16, 2014, while the Forum lawsuit was

---

[2] The quitclaim deed should have been in favor of the estate of Josephine Hose, as required by OCGA § 48-4-43, which says that the effect of a redemption "shall be to put the title conveyed by the tax sale back into the defendant in fi. fa."

still pending, La Chona served notices of foreclosure of the right to redeem, in large part, on the same individuals and entities, including Aberra, that Forum named as defendants in its 2010 action. La Chona based its right to bar redemption rights on the ground that it was the purchaser at the tax sale in August 2010 and held the tax deed. Under OCGA § 48-4-45 (a), "[a]fter 12 months from the date of a tax sale, the purchaser at the sale *or* his heirs, successors, or assigns may . . . forever bar the right to redeem the property from the sale by causing a notice or notices of the foreclosure" to be served upon certain specified persons. La Chona's barment notices said nothing about the redemption by Forum, its successor under the deed records, and said that the right to redeem the property would be barred on the latter of March 3, 2014, or thirty days after the receipt of the notice.

Then, on January 17, 2014, an affidavit of title was executed by La Chona and Forum. It stated that "the owner of the Property at the time of the tax sale was the Estate of Josephine Hose," and, contrary to the redemption deed, which said that Forum was a creditor of Josephine Hose, the affidavit of title said that Forum paid the redemption price because it thought that it was a creditor of an *heir* (unnamed in the affidavit) of the estate of Josephine Hose. The affidavit

also said that the heir did not have an interest in the property; that Forum therefore had no right to redeem the property; that Forum and La Chona had made a mutual mistake in allowing Forum's redemption; and that the "purported redemption is and always has been void." The affidavit concluded by saying that La Chona's tax deed "remains in full force and effect." The affidavit of title was not filed and recorded until February 10, 2014.

On January 23, 2014, in response to La Chona's barment notice, Aberra, in an effort to redeem the property as provided in OCGA § 48-4-40, sent La Chona a letter that stated: "The purpose of this letter is to make a complete, unconditional tender of the amount legally due for redemption of this property. Please provide me with that amount so that we may deliver the payment in a timely manner."[3] Aberra included no check or cash with that letter. The letter was copied by e-mail to Bradley Hutchins, an attorney, and Aberra's counsel called Hutchins about 9:30 a.m. on January 24, 2014, but was not able to reach him. Hutchins represented Forum in its litigation regarding the property, and

---

[3] The letter was sent by Aberra's current counsel. The letter did not state, however, that counsel was sending the letter on behalf of Aberra, although Aberra was "CC'd" on the letter, and counsel himself held an interest in the property and was served with a barment notice. La Chona asserts on appeal that it was not clear whether the letter was sent on behalf of Aberra or his current counsel. We need not, however, resolve this discrepancy for purposes of this appeal.

at the motion for summary judgment hearing in this case, Aberra's attorney stated that he thought that Hutchins also had represented La Chona. La Chona's counsel denied that Hutchins had represented La Chona, and there is nothing in the record to indicate conclusively that Hutchins did so (the only evidence linking Hutchins and La Chona is the affidavit of title, which was executed by Forum and La Chona and which says that, after it is recorded, it should be returned to Hutchins). Hutchins was never called as a witness regarding the matter. Aberra never heard from La Chona regarding the amount due for redemption.

On March 25, 2014, La Chona filed a petition to quiet title under OCGA § 23-3-40 et seq., alleging that it had barred the defendants' rights of redemption in the property by virtue of the barment notices it served on the defendants in January 2014 and that it therefore was the fee simple owner of the property under the tax deed. In its answer and counterclaim, Aberra contended that he had made a complete, unconditional tender to La Chona for the redemption of the property, that La Chona could not bar Aberra's right to redeem the property, and that Aberra was entitled to be declared the fee simple owner of the property upon his payment of the redemption price. Aberra later claimed that La Chona

had waived its right to tender by not accepting or responding to his January 23, 2014, letter.

In the meantime, Forum moved the trial court to dismiss its action regarding the property. In April 2014, about a month after La Chona filed its action, the trial court granted Forum's motion to dismiss. The order, which was entered by the same trial judge that entered the orders that are the subject of this appeal, said:

> After considering [Forum's] Motion and all responses filed thereto and after considering arguments of counsel, the Court hereby GRANTS [Forum's] Motion, without prejudice. [Forum] reserves its right to contend that the August 2010 tax deed at issue in this case is valid and enforceable and that the quitclaim deed of redemption previously filed of record with the Clerk of Court indicating that the tax deed had been redeemed by Forum IRA, LLC, was executed and filed in error and is therefore stricken. Plaintiff also contends that the tax deed has not been redeemed by any person and continues to be held by La Chona, LLC.
> . . . [Forum] or Aberra plan to file an action to quiet title as to the subject property, as soon as possible.

On November 10, 2014, La Chona moved for summary judgment, contending that Aberra had not made an adequate tender of the redemption price because his tender did not include payment for the amount due, as calculated under OCGA § 48-4-42, that La Chona had never waived its right to payment

8

of the redemption price, and that Aberra's right to redeem the property was barred.

The trial court referred the case to a special master, see OCGA § 23-3-43, who ruled in favor of La Chona on February 6, 2015. He concluded that Aberra had not made a valid legal tender to La Chona, which, the special master said, would have consisted of "at least the amount [Aberra] could not dispute owing." That amount, according to the special master, would have consisted of the purchase price of the property at the tax sale, $40,000, plus a premium of twenty percent of the amount of the tax sale for the first year after the sale and 10 percent for each year thereafter. See OCGA § 48-4-42 (a) (3). The special master also concluded that La Chona had not waived the tender requirement, because there was no "evidence in the record that [La Chona] refused to accept a payment." "Because Mr. Aberra never attempted to pay what was due on the tax deed, [La Chona] was never given the opportunity to accept or reject the tender."

Aberra filed exceptions to the special master's report, contesting his rulings on tender, as well as raising the issue, for the first time, that La Chona did not have a sufficient interest in the property to give a barment notice due to

9

the redemption deed executed on September 8, 2010. Aberra also contended that the special master should have disqualified himself because he was a named partner in the law firm that represented Forum in its action regarding the property and was, in fact, the named attorney on several pleadings in that action. Ruling that the special master should have disqualified himself in this action, the trial court set aside the special master's report on May 18, 2015.

On October 22, 2015, the trial court held a hearing on La Chona's motion for summary judgment. At that hearing, Aberra argued that, because of Forum's redemption of the property, La Chona did not have a sufficient interest in the property to institute barment proceedings in January 2014. Aberra also argued "that it's appropriate that the court not only deny La Chona's motion for summary judgment, but in fact grant summary judgment to Mr. Aberra on the issue of tender."

On November 5, 2015, the trial court granted La Chona's motion for summary judgment, ruling that Aberra did not make a valid tender because he did not tender "at least the amount he could not dispute owing" — "here the face amount of the tax deed ($40,000) plus the redemption premium of 20% of the first year after the tax sale and 10% in addition for each year thereafter."

10

The court also ruled that La Chona had not waived tender, saying that because "Aberra never made a present, bona fide offer to pay what was due on the tax deed, [La Chona] was never given the opportunity to accept or reject the tender." The trial court did not address Aberra's contention that La Chona did not have the right to start barment proceedings in January 2014. Aberra filed a motion for reconsideration, raising this issue and arguing that the trial court incorrectly decided the tender issue.

On December 3, 2015, the trial court entered an order on Aberra's motion for reconsideration. The court ruled that, in January 2014, La Chona "held no record interest in the property" and was therefore not entitled to send barment notices at that time. Further, the court ruled that, "even if La Chona was entitled to foreclose the right of redemption as of January, 2014," it "waived the requirement of tender as to Aberra by refusing to respond to the letter from Aberra's counsel, and subsequent communications, which unconditionally offered to pay whatever amount was due to redeem the Subject Property."

2. La Chona contends that Aberra waived his right to assert that La Chona did not have the right to foreclose Aberra's right of redemption in January 2014. For the reasons that follow, we disagree.

11

La Chona argues that, because Aberra raised this issue for the first time as an objection to the special master's report, and because the objection was not made within 20 days of the report, it was untimely under OCGA § 9-7-14, and the trial court improperly considered the issue in ruling on Aberra's motion for reconsideration. This contention is incorrect for several reasons.

First, OCGA § 9-7-14, which governs objections to auditors' reports, is inapplicable in this case, as the special master was appointed pursuant to OCGA § 23-3-43. Moreover, this Court has explained that the quiet title statutes "'make[ ] no provision for filing exceptions to the special master's report.'" *Steinichen v. Stancil*, 281 Ga. 75, 76 (635 SE2d 158) (2006) (citation and punctuation omitted).

> The fact that there is no statute entitling a party to file exceptions to a special master's report supports the conclusion that a party's failure to file objections before the trial court adopts the report as the court's judgment does not bar the party from objecting to the trial court's judgment in a motion for new trial or on appeal.

12

*Id*. In any event, Aberra filed his first exceptions to the special master's report just five days after the report was filed, and then, twenty-five days after it was filed, he amended the exceptions to add the objection that La Chona lacked the right to send barment notices in January 2014. More importantly, the trial court set aside the special master's report, so we are not concerned on appeal whether exceptions to it were timely filed. Finally, Aberra properly apprised La Chona of this issue by raising it in his objections to the special master's report, some eight months before the trial court's ruling on La Chona's motion for summary judgment, as well as by arguing it at the hearing on La Chona's motion for summary judgment, about two weeks before the trial court's ruling on the motion, and by then raising the issue again in his motion for reconsideration of the court's ruling on summary judgment. For these reasons, the issue was properly raised by Aberra.

3. La Chona contends that the trial court erred in ruling that it did not have the right to foreclose the right of redemption in January 2014. Relying on *DRST Holdings, Ltd. v. Brown*, 290 Ga. 317 (720 SE2d 626) (2012), La Chona contends that a redemption of property sold at a tax sale by a person who does not have an interest in the property or who is not a creditor of the defendant in

fi. fa. does not satisfy the requirements of OCGA §§ 48-4-40 and 48-4-41 and is void ab initio. Here, according to La Chona, Forum was not a creditor of the defendant in fi. fa., rendering void its redemption of the property and meaning that La Chona was the owner of the property under the tax deed in January 2014 and therefore had the right to send barment notices at that time as the purchaser of the property under OCGA § 48-4-45 (a).

(a) To begin, for purposes of this case, we will assume that the record establishes that Forum was not a creditor of an heir of the defendant in fi. fa. and that the April 24, 2015, order of the trial court in the Forum litigation struck the redemption deed as void, but the issue merits some discussion.

The affidavit of title, which Aberra, not La Chona, attached to several of his pleadings, does state that Forum was not a creditor of an heir of the defendant in fi. fa., and it is some evidence of that fact. See *Maxco, Inc. v. Volpe*, 247 Ga. 212, 214 (1) (274 SE2d 561) (1981) ("The recording of the affidavit does three things. It puts the world on notice of the facts contained therein, it preserves the evidence and it provides a foundation for its admissibility provided the facts are material." (Citations omitted.)); OCGA § 44-2-20. See also *Kemp v. Neal*, 288 Ga. 324, 327 (2) (704 SE2d 175) (2010)

("recorded affidavits relating to land are not conveyances or a legal proceeding by which one may attack the title to realty or cure a defect in the title"). But La Chona never asked the trial court to make a finding of fact on this issue, and the trial court did not do so.

Instead, La Chona asserted that, in the Forum litigation, the trial court "found that Forum did not have a right of redemption and that the redemption deed was void" and that "'the quitclaim deed of redemption . . . was executed in error and is therefore stricken.'" As for the assertion that the Forum court found that the redemption deed was void, the court used no such language. As for the second assertion, La Chona was quoting the dismissal order in the Forum litigation and omitted critical language from the sentence in question. The phrase comes from a sentence that says that "*[Forum] reserves its right to contend . . .* that the quitclaim deed of redemption . . . was executed in error and is therefore stricken." In fact, the thrust of the voluntary dismissal order in the Forum litigation was Forum's reservation of its right to contend that the redemption deed was executed in error, and the order concludes by saying that Forum or Aberra plan on filing a quiet title action regarding the property.

Admittedly, the sentence in the voluntary dismissal order that says that

Forum is reserving its right to contest the validity of the redemption deed ends with the words, "and is therefore stricken." In the context of Forum's reservation of rights in the voluntary dismissal order to contest the validity of the redemption deed, including in the very sentence in which these four words appear, it is difficult to conclude that these four words meant that the trial court was finding that the redemption deed was void and was striking it from the deed books. Additionally, a voluntary dismissal of a complaint without prejudice is not on the merits. See OCGA § 9-11-41 (a) (2) (providing for the voluntary dismissal of an action by court order); OCGA § 9-11-41 (a) (3) (providing that "[a] dismissal under this subsection is without prejudice, except that the filing of a second notice of dismissal operates as an adjudication upon the merits"). Nevertheless, although we note these ambiguities regarding whether the Forum court found that the redemption deed was void and struck it, it is arguable that the trial court in this case read the order that way,[4] and the parties do not ask us to consider whether that reading is correct.[5] More importantly, we do not need

[4] The order granting Aberra's motion for reconsideration says that La Chona "would have been entitled to initiate barment proceedings after the April 24, 2014 order striking La Chona's quitclaim deed of redemption."

[5] In his brief, however, Aberra says that the April 2014 order contains "ambiguous language" regarding the striking of the redemption deed and characterizes the order as "seem[ing] to strike" the

16

to resolve that issue to decide this case. That is because, even if we assume that the redemption deed was void and was stricken in April 2014, we must rule in Aberra's favor for the reasons that follow.

(b) We turn now to the issue of whether La Chona had the right to send barment notices in January 2014. We conclude that it did not.

The persons who have the right to send barment notices are specified in OCGA § 48-4-45 (a), and they include either "the purchaser at the [tax] sale *or* his heirs, successors, or assigns." (Emphasis added.) As previously noted, relying on *DRST Holdings,* 290 Ga. 317, La Chona contends that the redemption deed was void ab initio and that La Chona therefore was the owner of the property under the tax deed in January 2014 and had the right to send the barment notices.

*DRST Holdings* does stand for the proposition that La Chona asserts, but it was addressing whether a person who desired to redeem property sold at a tax sale could acquire the required interest in the property after the redemption, even years later as in that case. See OCGA § 48-4-40 (providing that "the defendant in fi. fa. or any person having any right, title, or interest in or lien upon such

redemption deed.

17

property may redeem" the property); OCGA § 48-4-41 (providing that a "creditor of the defendant in fi. fa. who has no lien" may redeem the property). If we had held that a person could redeem the property without having an interest in it or being a creditor of the defendant in fi. fa., it would have rendered the statutes governing the persons who can redeem property meaningless. See *DRST Holdings,* 290 Ga. at 318. That position also would have placed a person transferring the property pursuant to a redemption in the difficult and untenable position of not knowing if the purported redeemer was or ever would be entitled by law to redeem the property.

Here, on the other hand, if we were to adopt La Chona's position, it would place a person with an actual interest in the property sold at a tax sale and who, by law, is entitled to redeem the property in the onerous position of not knowing to whom he or she should pay the redemption price, making it hard to redeem the property in the limited time allowed by a barment notice. To demonstrate, here, in early January 2014, Aberra was faced with deed records that showed that La Chona had no record interest in the property, that the property had already been redeemed, that the recorded interest had gone back to the defendant in fi. fa. under the redemption deed, and that Forum held a super-lien. Aberra

18

was also faced with a lawsuit by Forum in which it was asserting its lien rights.

This landscape changed abruptly on January 16, 2014, when La Chona sought to foreclose Aberra's right to redeem under the authority of its tax deed, a position that, if valid, entitled La Chona to the redemption price. To compound Aberra's problems, when La Chona sent its barment notice, it did not even mention that Forum had redeemed the property from La Chona in 2010, much less attempt to reconcile the discrepancy.[6] Although La Chona did file an affidavit of title in February 2014, asserting that Forum did not have a right to redeem the property and saying that La Chona had refunded to Forum the amount it paid for the redemption, this was of no help to Aberra's predicament, because "recorded affidavits relating to land are not conveyances or a legal proceeding by which one may attack the title to realty or cure a defect in the title." *Kemp*, 288 Ga. at 327 (2) (citations omitted). See also OCGA § 44-2-20 (setting forth the requirements for recorded affidavits). Aberra perhaps could have asked a court to resolve whether La Chona was entitled to the redemption money, but it would have been extremely difficult for that resolution to occur

---

[6] This turn of events is made the more puzzling because La Chona and Forum have at least one common member, who presumably was aware of the conflict between Forum's and La Chona's positions (this member verified Forum's 2010 complaint and signed the barment notices).

19

within the limited time permitted by La Chona's barment notice.

The foregoing discussion illustrates that the position asserted by La Chona would defeat the primary purpose of OCGA § 48-4-45, which is the protection of the right of property owners to redeem their property. When construing that statute, we must bear in mind that

> the enforcement and collection of taxes through the sale of the taxpayer's property has been regarded as a harsh procedure, and, therefore, the policy has been to favor the rights of the property owner in the interpretation of such laws. Since the policy has been to favor the property owner[,] provisions permitting the owner to redeem his property are liberally construed to accomplish their objectives.

*Reliance Equities, LLC v. Lanier 5, LLC*, 299 Ga. 891, 894 (1) (792 SE2d 680) (2016) (citation and punctuation omitted). To reiterate, OCGA § 48-4-45 (a) says that either "the purchaser at the [tax] sale" *or* "his heirs, successors, or assigns" have the right to send barment notices. Liberally construing this phrase to accomplish the objective of permitting property owners to redeem their property, we conclude that, once the purchaser at the tax sale transfers the property to another person and the deed documenting that transfer is properly recorded, as here, the purchaser at the sale no longer is entitled to send barment notices absent some consideration not present in this case.

20

We also think that this meaning is consistent with affording "the statutory text its 'plain and ordinary meaning,'" viewing it "'in the context in which it appears,'" and reading it "'in its most natural and reasonable way, as an ordinary speaker of the English language would.'" *Nguyen v. Southwestern Emergency Physicians, P.C.*, 298 Ga. 75, 78-79 (779 SE2d 334) (2015) (citation omitted). As previously noted, OCGA § 48-4-45 permits only the purchaser at the tax sale or his successor to send a barment notice. A "successor" is "[s]omeone who succeeds to the office, rights, responsibilities, or place of another; one who replaces or follows a predecessor." See Black's Law Dictionary (10th ed. 2014). Considering this text in the context of the statute — to provide notice to people who have had their property sold at a tax sale so that they may regain it by paying the redemption price — and reading it in its most natural and reasonable way, we conclude that, when someone has redeemed property from the purchaser at a tax sale and the tax purchaser has properly recorded the redemption deed, there is a successor to the tax purchaser within the meaning of the statutory text, and the tax purchaser is no longer entitled to send barment

notices.[7]  See generally OCGA § 48-4-45 (b) (demonstrating the importance of public land records in the statutory scheme for tax sales and redemptions by providing that "[n]othing contained in this Code section shall be construed to require that any [barment] notice be sent to or served upon any person whose right, title, interest in, or lien upon the property does not appear *of record* in the county in which the land is located").  That the redemption deed may be subject to being set aside by the tax purchaser on the ground it is void does not detract from this conclusion.

Accordingly, we conclude that the trial court properly ruled that La Chona was not authorized to send the barment notices in January 2014.

4.  La Chona contends that the trial court erred in ruling that it had waived the requirement of tender by not responding to the letter from Aberra's counsel. We need not decide this issue, however.  The trial court only decided the tender issue in the event that it was wrong that La Chona did not have a right to seek to bar Aberra's right to redeem the property.  In other words, if the trial court were correct that La Chona could not seek to bar the right of redemption as the

_____

[7] The successor here is technically the defendant in fi. fa. under the redemption deed, meaning that the successor may not be one that could send barment notices under OCGA § 48-4-45, but it nonetheless means that the tax purchaser may no longer send such a notice.

22

"tax purchaser," then it also was not entitled to tender,[8] and the question of whether La Chona waived tender of the redemption amount by rejecting tender and by refusing to provide a payoff amount did not need to be decided. Because we have concluded that the trial court correctly ruled that La Chona did not have the right to send the barment notices, we need not decide the tender issue.

Judgment affirmed. All the Justices concur.

Decided March 6, 2017.

Title to land. DeKalb Superior Court. Before Judge Adams.

John C. Clark, for appellant.

Robinson & Blazer, John E. Robinson, Gregory H. Blazer, Scott B. Fields, for appellees.

---

[8] See OCGA § 48-4-42 (d).