**SECOND DIVISION**
**MARKLE, J.,**
**LAND and DAVIS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 14, 2025**

# In the Court of Appeals of Georgia

A24A1846. GROUNDFLOOR HOLDINGS GA, LLC v. WFG NATIONAL TITLE INSURANCE COMPANY.
A24A1847. GROUNDFLOOR HOLDINGS GA, LLC v. TRADITIONAL TITLE SERVICES, INC.
A24A1848. STEWART TITLE GUARANTY COMPANY v. GROUNDFLOOR HOLDINGS GA, LLC.

DAVIS, Judge.

This complicated property dispute involves the purchase of ten properties in a subdivision in Augusta, Georgia, that, unbeknownst to the buyer and the lender, were already covered by a superior lien that was subsequently foreclosed upon, costing over a million dollars to those involved. Groundfloor Holdings GA, LLC, the lender, brought this lawsuit against multiple entities, seeking to recover the nearly $2 million that it provided to finance the doomed transaction. After the trial court made various summary judgment rulings, these three appeals followed.

In Case No. A24A1846, Groundfloor appeals from the trial court's grant of summary judgment to WFG National Title Insurance Company, which Groundfloor argues had agreed to provide title insurance to cover two of the properties. We agree that fact questions remain as to whether Groundfloor paid WFG's agent the requisite premiums to issue title insurance and whether an enforceable agreement existed, and so we reverse the trial court's grant of summary judgment on Groundfloor's breach of contract claim, vacate its grant of summary judgment on its claim for attorney fees, and remand for the trial court to consider the attorney fees issue in the first instance.

In Case No. A24A1847, Groundfloor appeals from the trial court's grant of summary judgment to Traditional Title Services, Inc. ("TTS"), which it argues was negligent in performing the title search and failing to discover the superior lien on the properties. We agree that fact questions remain as to whether TTS conducted the title search negligently, and so we reverse the trial court's grant of summary judgment on Groundfloor's negligence claim, vacate its grant of summary judgment on its claims for punitive damages and attorney fees, and remand for the trial court to consider those two claims in the first instance.

In Case No. A24A1848, Stewart Title Guaranty Company cross-appeals from the denial of its motion for summary judgment on Groundfloor's claims against it. We conclude that fact questions remain about whether Stewart had agreed to provide title insurance coverage, but we agree with Stewart that Groundfloor's claim for OCGA § 13-6-11 attorney fees fails as a matter of law. As a result, we reverse the trial court's denial of summary judgment on Groundfloor's claim for OCGA § 13-6-11 attorney fees against Stewart, but we otherwise affirm the trial court's summary judgment order.

> A party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Summary judgment is proper if the defendants present evidence negating an essential element of the plaintiff's claims or establish from the record an absence of evidence to support those claims. If the defendants establish those requirements, the plaintiff must point to specific evidence giving rise to a triable issue. The appellate court conducts a de novo review of an order granting or denying a motion for summary judgment, viewing the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

(Citations and punctuation omitted.) *Bedsole v. Action Outdoor Advertising JV, LLC*, 325 Ga. App. 194 (750 SE2d 445) (2013).

So viewed, the record shows that Flourish Home Investors, LLC contracted to purchase ten properties owned by 230 Goshen Investment Group, LLC on East Barcelona Way in Augusta, Georgia. Initially, Velocity Commercial Capital, LLC was chosen to finance the purchase, but after Velocity backed out, Groundfloor agreed to loan $1,970,730 to Flourish to cover the transaction. The agreement between Groundfloor and Flourish required Flourish to obtain title insurance to ensure that Flourish's title would be free and clear of any encumbrances and to provide Groundfloor with a senior, first-priority security interest in the properties. SSP Title & Escrow Solutions was hired to be the settlement agent to handle the sale of all ten properties. As part of the closing process, SSP hired TTS to perform a title search for the ten properties, and TTS found "no open loans of record" for any of the properties during the search.

In anticipation of the closing of two of the properties on August 10, 2018, WFG, through SSP, issued two "Commitment[s] for Title Insurance" for the two

properties.[1] These "Commitments" were standardized forms which WFG uses in connection with real estate closings. Under the terms of the Commitments, WFG agreed to issue title insurance upon the closing and the payment of the premium. Generally, WFG would issue the Commitments before closing, and it would issue a full title insurance policy after closing once it received its premium payment at closing. Further, the bottom of each page contained a disclaimer:

> This is only a part of a 2016 ALTA ® Commitment for Title Insurance issued by Stewart Title Guaranty Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter signature by the Company or its issuing agent that may be in electronic form.

Notably, the Commitments did not include the Notice or Commitment to Issue Policy. Only one of the two commitments was signed by SSP and WFG.

---

[1] "A 'commitment for title insurance' is also sometimes called an insurance binder, which is a contract offering proof of temporary insurance at the time of closing until the title policy issues." *CoreVest American Finance Lender LLC v. Stewart Title Guar. Co.*, 358 Ga. App. 596, 597 n. 1 (854 SE2d 381) (2021).

At the August 10, 2018, closing, Groundfloor wired a lump sum of money to SSP to cover the property sale and the various closing costs, and SSP was responsible for disbursing payment to the relevant parties. On the settlement statements, "Stewart Title/Worden & Asociados, LLC" was listed as the title insurance provider, and WFG did not receive any money from SSP for either property.

The remaining eight properties were scheduled to close on August 31, 2018. Prior to the August 31 closings, SSP coordinated with Worden and Asociados — "a non-exclusive agent authorized to issue [Stewart's] title policies covering property in the State of Georgia" — to provide title insurance for the eight properties. According to Stewart, its customary practice is to first issue a title commitment, and then issue a title insurance policy after the closing once the lender pays the premium to Worden, who then passes along a portion of the premium to Stewart. On August 6, 2018, Worden issued a "Commitment for Title Insurance" for each property. Each Commitment bore the name "Stewart Title Guaranty Company" at the top, and the name "Worden & Asociados, LLC" was typed above an unsigned signature line. Although Groundfloor was listed as a proposed insured on each Commitment, the terms of one of the Commitments required a "Security Deed from Flourish . . . to

6

Velocity . . . securing the loan." Further, the bottom of each page contained the same disclaimer listed above under WFG's Commitments. Notably, the Commitments did not include the Notice or Commitment to Issue Policy, and the documents were unsigned.

On August 13 and 16, 2018, Stewart issued Closing Protection letters ("CPLs") for two of the eight properties.[2] The CPLs were addressed to "Velocity Commercial Capital, LLC, Its Successors and/or Assigns ATIMA,"[3] identified Worden as its "issuing agency" and Flourish as the "buyer/borrower," and were signed by Stewart's Senior Vice President and Chief Underwriting Counsel. Each CPL provided that Stewart would

> indemnify you for actual loss of settlement funds incurred by you in connection with the closing of the Real Estate Transaction conducted by the Issuing Agent or Approved Attorney on or after the date of [the] letter, provided[ ] . . . the Company issues or is contractually obligated to issue title insurance . . . in connection with the closing . . . [and] you

---

[2] A "Closing Protection letter" means "insurance that indemnifies a buyer, lender, or seller[.]" OCGA § 33-7-8.1 (a) (1). It is unclear from the record why CPLs were issued on only two of the eight properties at issue at the second closing.

[3] ATIMA is a common acronym meaning "as their interests may appear." See *Lee v. Am. Cent. Ins. Co.*, 241 Ga. App. 650, 651 (530 SE2d 727) (1999).

are to be the (i) lender secured by an Insured Mortgage, as defined in the ALTA Loan Policy (6-17-06), its assignee or a warehouse lender, (ii) purchaser of an interest in land, or (iii) lessee of an interest in land; and . . . further provided the loss arises out of: 1. Failure of the Issuing Agent or Approved Attorney to comply with your written closing instructions to the extent that they relate to (a) the status of the title to that interest in land or the validity, enforceability and priority of the lien of the mortgage . . . . 2. Fraud, theft, dishonesty, or negligence of the Issuing Agent or Approved Attorney in handling your funds or documents in connection with the closing to the extent that the fraud, theft, dishonesty, or negligence relates to the status of the title to that interest in land or the validity, enforceability, and priority of the lien of the mortgage.

The CPLs further provided that Worden was Stewart's agent "only for the limited purpose of issuing title insurance policies [and not] for the purpose of providing closing or settlement services."

At the August 31st closing, Goshen transferred the eight properties to Flourish with Groundfloor serving as the lender. Groundfloor transferred money to SSP to fund the loans and cover the closing costs. The HUD Settlement Statement for each property showed that a payment for title insurance was made to "WORDEN & ASOCIADOS, LLC/Stewart Title Guar."

After the closings, in January 2019, Groundfloor learned that Goshen had previously granted security interests in all ten houses to Corevest American Finance Lender, LLC, and that Corevest planned to foreclose on its senior security deed and sell the properties because Goshen had defaulted on its loans. Groundfloor made a claim to WFG and Stewart for its losses as to each property, but WFG and Stewart both denied the claims, asserting that no title insurance policies were ever issued.

Groundfloor filed suit against multiple defendants, including SSP, Flourish, and Worden. Groundfloor later amended the complaint to assert claims for breach of contract, punitive damages, and OCGA § 13-6-11 attorney fees against WFG, Stewart, and multiple additional defendants as well as claims for negligence, punitive damages, and OCGA § 13-6-11 attorney fees against TTS. WFG, TTS, and Stewart all filed motions for summary judgment on the claims against them. Following a hearing, the trial court granted summary judgment to WFG and TTS, but it denied summary judgment to Stewart, and these appeals followed.

*Case No. A24A1846*

1. Groundfloor first argues that the trial court erred in concluding that there was a lack of consideration to support any breach of contract claim against WFG. We

9

conclude that fact issues remain on Groundfloor's claim, precluding summary judgment for WFG.

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." (Citation omitted.) *CoreVest Am. Finance Lender LLC v. Stewart Title Guar. Co.*, 358 Ga. App. 596, 599 (1) (854 SE2d 381) (2021).

> Insurance in Georgia is a matter of contract and the parties to the contract of insurance are bound by its plain and unambiguous terms. Consideration is an essential element of a contract, and total failure of consideration renders the contract null and void. If a provision of an insurance contract is ambiguous, we apply the normal rules of contract construction, which include construing the contract strictly against the insurer/drafter and in favor of the insured. Additionally, we construe insurance contracts liberally to provide coverage and avoid forfeitures.

(Citations and punctuation omitted.) *Ball-Rodriquez v. Progressive Premier Ins. Co. of Illinois*, 367 Ga. App. 481, 483-484 (887 SE2d 74) (2023).

Here, it is undisputed that, before closing, WFG issued two title commitments for the two properties that closed on August 10, 2018. It is also undisputed that Groundfloor paid SSP as the settlement agent for title insurance premiums at closing.

10

Although WFG did not receive any money from Groundfloor or SSP for either of the two properties that closed on August 10, 2018, there was evidence that SSP was an authorized agent of WFG that was authorized to collect premiums on WFG's behalf. Thus, because Groundfloor paid SSP, we cannot say as a matter of law that Groundfloor failed to hold up its end of the bargain, as any failure to transfer the money from SSP to WFG would be a matter entirely between those two entities. See *Life Ins. Co. of Va. v. Wood*, 101 Ga. App. 661, 663 (1) (115 SE2d 240) (1960) ("[R]eceipt by the agent, duly authorized to accept payment, is receipt by the company of such payment.") (emphasis omitted). Although Stewart and not WFG was listed as the title insurer on the closing documents, without more, we cannot say that this conclusively establishes that the title insurer had changed before closing.

We therefore conclude that a jury question exists as to whether Groundfloor properly paid WFG to provide title insurance for the two properties and therefore whether WFG is liable to Groundfloor as alleged.

2. Groundfloor next argues that the trial court erred by concluding that there was no "meeting of the minds" and no enforceable contract existed because there was no valid offer and acceptance. We agree.

11

A contract is unenforceable where there is no meeting of the minds between the parties regarding a material element thereof. And all essential elements, including the element of consideration, must be certain. The cardinal rule of construction is to determine the intention of the parties. In determining if parties had the mutual assent or meeting of the minds necessary to reach agreement, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable person in the position of the other contracting party would ascribe to the first party's manifestations of assent. In making that determination, the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence.

(Citations and punctuation omitted.) *Graham v. HHC St. Simons, Inc.*, 322 Ga. App. 693, 695-696 (2) (746 SE2d 157) (2013).

As an initial matter, as we concluded in Division 1, a fact question exists about whether Groundfloor paid premiums to WFG's agent on WFG's behalf. This alone is sufficient, without more, to trigger WFG's obligation to issue a title insurance policy. As we held in *CoreVest Am. Finance Lender LLC*, another case involving a similarly problematic property transaction,[4] this Court determined that factual

---

[4] Although *CoreVest Am. Finance Lender LLC* involved a property transaction in Valdosta, Georgia, we cannot help but notice that many of the same parties in that

questions about the issuance of a policy precluded judgment on the pleadings where the settlement statement showed that premiums were paid to "W.A./Title Company." See id. at 601-602 (2). As we explained, "If Worden, as Stewart's issuing agent, accepted premiums, Stewart was obligated to issue a policy." Id. at 602 (2). Likewise, in the instant case, the settlement statements show that Groundfloor paid title insurance premiums to SSP, and there is evidence in the record that SSP was acting as WFG's agent for this transaction. Under these circumstances, factual questions remain as to whether WFG was obligated to issue a policy. See id.; *Parks v. State Farm Gen. Ins. Co.*, 231 Ga. App. 26, 28 (497 SE2d 575) (1998) ("A receipt for premiums may in certain circumstances constitute a binder, provided that the surrounding circumstances would lead a reasonable person to conclude that such was the parties' intention.").

In any event, we conclude that SSP's acceptance of the premium checks despite the allegedly unsigned, incomplete Commitments also create an issue of fact regarding WFG's obligation to issue a policy. See *BCM Constr. Group, LLC v. Williams*, 353 Ga. App. 811, 815 (1) (840 SE2d 51) (2020) ("The question of whether the conduct of the

---

case are involved in the property transaction here.

13

parties causes a waiver of contract provisions, and a quasi new agreement effected, ordinarily, is a question of fact for a jury.") (citation and punctuation omitted).

Accordingly, we conclude that the trial court erred by granting summary judgment on Groundfloor's breach of contract claim against WFG.

3. Groundfloor also argues that the trial court erred in dismissing its claim for attorney fees under OCGA § 13-6-11. Because we reverse the grant of summary judgment on the breach of contract claim against WFG, we vacate the grant of summary judgment on Groundfloor's claim for attorney fees and remand for the trial court to consider the merits of the fees claim in the first instance.

### Case No. A24A1847

4. In this appeal, Groundfloor argues that the trial court erred in concluding that TTS was not negligent when it conducted the title search and failed to discover that there was a superior lien on the Barcelona properties. We ultimately conclude that fact issues remain as to whether TTS was negligent in conducting the title search.

"The essential elements of a negligence claim are the existence of a legal duty; breach of that duty; a causal connection between the defendant's conduct and the

14

plaintiff's injury; and damages." (Citations and punctuation omitted.) *Boller v. Robert W. Woodruff Arts Center, Inc.*, 311 Ga. App. 693, 695-696 (1) (a) (716 SE2d 713) (2011).

> A legal duty is the obligation to conform to a standard of conduct under the law for the protection of others against unreasonable risks of harm. But the innocence of the plaintiff is immaterial to the existence of the legal duty on the part of the defendant in that the plaintiff will not be entitled to recover unless the defendant did something that it should not have done, i.e., an action, or failed to do something that it should have done, i.e., an omission, pursuant to the duty owed the plaintiff under the law.

(Citation and punctuation omitted.) *Natl. Emergency Med. Svcs., Inc. v. Smith*, 368 Ga. App. 18, 30 (2) (889 SE2d 162) (2023).

Here, The record shows that TTS performed title searches for all of the ten properties, and it reported its findings to SSP. TTS performed the title searches by searching the title records for the name of the seller, "230 Goshen." The Richmond County Clerk's Office, however, mistakenly listed the grantor on the Corevest security deed as "203 Goshen Investment Group, LLC" instead of "230 Goshen Investment Group, LLC" in their system. As a result, TTS's title search did not discover the Corevest security deed. TTS's representative testified that it was "out

of the ordinary" that their title search did not find any open loans for the Barcelona properties. As a result, they included a "warning" on their results, saying that there were no open loans and asking the other parties to "please confirm." According to the clerk's office, if TTS had searched using the term "Goshen" or "Goshen Investment," the prior security deed would have appeared on the title search. When conducting title searches, TTS does search for common misspellings in some instances, but it did not do so in this case. A few weeks after the closings, while conducting a different title search in September 2018, TTS discovered the Corevest security deed on the Barcelona properties. There does not appear to be evidence in the record that TTS disclosed this to Groundfloor until after Groundfloor found out about the prior security deed from Corevest in January 2019.

From these facts, we conclude that a jury question remains as to whether TTS was negligent in conducting the title search and whether such negligence contributed to Groundfloor's losses. Although TTS argues that it followed the guidance provided by the clerk's office by searching by a party's name,[5] we do not find this argument

---

[5] The Richmond County Clerk's Office recommends that users search for security deeds by party name. The clerk's office does not recommend that users search the title records by other means such as the lot number, subdivision number, or unit number because "there is no specific guideline for the way that the property

16

conclusive. As noted above, if TTS had merely searched "Goshen" or "Goshen Investment," the prior security deed would have appeared on the title search. Thus, TTS did not have to search by the address, tax ID number, or unit number (although it could have done so), but it instead could have discovered the prior deed even while following the recommended method of searching by the party's name. And given the evidence above that TTS does occasionally check for misspellings and that the results of the title search were admittedly "out of the ordinary," a jury could potentially conclude that a reasonable searcher would try to search the records again using alternative terms, especially considering how numbers can commonly be transposed, as they were in this case.

We therefore conclude that there is a jury question remaining as to whether TTS was negligent in conducting the title search in this case, and we reverse the trial court's grant of summary judgment.

---

has to be presented on the document," so the information "might not be indexed if it was not included on the deed." We note, however, that we do not necessarily find this guidance to be conclusive as to the reasonableness of a title searcher's actions, especially where, as here, the initial result of the search appeared to have raised a potential red flag regarding the title.

5. Groundfloor also argues that the trial court erred in dismissing its claims for punitive damages and attorney fees under OCGA § 13-6-11. Because the trial court dismissed these claims in light of its grant of summary judgment on Groundfloor's negligence claim, we vacate the trial court's grant of summary judgment and remand for it to consider in the first instance whether punitive damages and attorney fees are warranted.

*Case No. A24A1848*

6. In Case No. A24A1848, Stewart cross-appeals from the trial court's denial of its motion for summary judgment. Stewart's primary argument on appeal is that the trial court erred by denying summary judgment on Groundfloor's breach of contract claim because (1) the title commitments did not constitute binding offers to issue policies because they are incomplete and unsigned; and (2) the CPLs are invalid because they were issued to Velocity, not Groundfloor, and because Worden did not conduct the closings as required by the terms of the CPLs or receive the settlement funds (as Stewart's issuing agent).

First, we again note that a fact question exists about whether Groundfloor paid premiums to Stewart for title insurance, which is sufficient, without more, to trigger

Stewart's obligation to issue a title insurance policy. See *CoreVest Am. Finance Lender LLC*, supra, 358 Ga. App. at 601-602 (2). Here, the settlement statements show that title insurance premiums were paid to "WORDEN & ASOCIADOS, LLC/Stewart Title Guar." Under these circumstances, factual questions remain as to whether Stewart was obligated to issue a policy. See id.; *Parks*, supra, 231 Ga. App. at 28. And as we concluded in Division Two, supra, Worden's acceptance of the premium checks despite the unsigned, incomplete Commitments, also create an issue of fact regarding Stewart's obligation to issue a policy. See *BCM Constr. Group, LLC*, supra, 353 Ga. App. at 815 (1).

Likewise, questions of fact remain as to whether the CPLs are binding. Although the CPLs were addressed to Velocity and "Its Successors and/or Assigns ATIMA," because Groundfloor took Velocity's place as the lender for the transaction, and the term "successors" is not defined in the policy, a jury could find that Groundfloor qualified as a "successor" under the CPLs. See *La Chona, LLC v. Aberra*, 300 Ga. 670, 680 (3) (b) (797 SE2d 895) (2017) ("A successor is someone who succeeds to the office, rights, responsibilities, or place of another; one who replaces or follows a predecessor.") (citation and punctuation omitted). And as for Stewart's

argument that Worden did not conduct the closings as required by the terms of the CPLs, there is evidence in the record from which a jury could find that Worden was actively involved in the closing, including the notation on the settlement statements that title insurance premiums were paid to Worden, as well as a HUD property address addendum that was prepared by "The Law Offices of Worden & Asociados, LLC."

Given these circumstances, the validity of the Commitments and the CPLs are jury questions, and the trial court properly denied summary judgment on Groundfloor's breach of contract claim against Stewart.

7. Stewart also argues that the trial court erred in denying summary judgment on Groundfloor's claim for attorney fees under OCGA § 13-6-11 because Groundfloor's exclusive remedy to obtain attorney fees in this matter is through OCGA § 33-4-6. We agree.

OCGA § 33-4-6 provides a means for an insured to recover bad faith penalties against an insurer. It provides:

> In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that

such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer.

OCGA § 33-4-6 (a). "OCGA § 33-4-6 provides the exclusive remedy for an insured's claim of bad faith failure to pay policy proceeds." *Am. Safety Indem. Co. v. Sto Corp.*, 342 Ga. App. 263, 273 (5) (802 SE2d 448) (2017). Therefore, "[Groundfloor's] claim for attorney fees under OCGA § 13-6-11 was not authorized because the penalties contained in OCGA § 33-4-6 are the exclusive remedies for an insurer's bad faith refusal to pay insurance proceeds." (Citation and punctuation omitted.) *Auto-Owners Ins. Co. v. Hale Haven Properties, LLC*, 346 Ga. App. 39, 50 (1) (c) (ii) (815 SE2d 574) (2018).

Groundfloor counters that OCGA § 33-4-6 is inapplicable to the instant case because its breach of contract claim is based on Stewart's failure to issue a title insurance policy, not its bad faith refusal to pay insurance proceeds under that policy. This argument is circular, however, because Stewart would only be obligated to issue a title insurance policy if a contract existed, and if such a contract existed, Stewart

would be obligated to pay under the policy. In any event, Groundfloor clearly alleged in its complaint that Stewart breached its contract with Groundfloor by refusing to acknowledge that Groundfloor has title insurance policies with Stewart *and* by failing to provide insurance coverage for the losses Groundfloor sustained due to the undisclosed senior liens on the eight properties. See *Thompson v. Homesite Ins. Co. of GA*, 345 Ga. App. 183, 189 (2) (812 SE2d 541) (2018) ("Even where the insured alleges other theories of recovery distinct from a bad faith claim, absent a special relationship beyond that of insured and insurer, if such claims are predicated on the insurer's failure to pay a claim, OCGA § 33-4-6 is the exclusive vehicle through which the insured may make a claim for attorney fees against the insurer."). Accordingly, because OCGA § 33-4-6 was the sole vehicle for Groundfloor to pursue attorney fees against Stewart, the trial court erred by denying Stewart's motion for summary judgment on Groundfloor's claim for OCGA § 13-6-11 attorney fees.

Thus, we reverse the trial court's denial of summary judgment on Groundfloor's claim for OCGA § 13-6-11 attorney fees against Stewart. We otherwise affirm the trial court's order denying summary judgment to Stewart.

*Judgment reversed in part, vacated in part, and case remanded in Case No. A24A1846. Judgment reversed in part, vacated in part, and case remanded in Case No. A24A1847. Judgment affirmed in part and reversed in part in Case No. A24A1848. Markle and Land, JJ., concur.*